RUTH VAN WINKLE, APPELLANT, V. ELECTRIC HOSE & RUBBER CO., A NEBRASKA CORPORATION, APPELLEE.

332 N.W.2d 209

Filed April 8, 1983. No. 82-690.

Jim Zimmerman of Atkins, Ferguson, Zimmerman, Carney & Law, for appellant.

Stephen W. Kay of Kay & Kay, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

This is an appeal in a proceeding under the Workmen's Compensation Act. The plaintiff, Ruth Van Winkle, was injured on May 20, 1981, while employed as an electricator at Electric Hose & Rubber Co. She felt something "pop" in her lower back while pushing a tub full of rubber hose during the course of her employment. In this proceeding plaintiff sought permanent and total disability benefits on the basis that the back injury which she suffered resulted in a hysteric conversion reaction which has left her paralyzed from the waist down.

After the initial hearing before a single judge, the cause was dismissed. On rehearing before a three-judge panel of the Workmen's Compensation Court, plaintiff received an award for temporary total disability for 9 weeks on the basis of the injury to her back. The court held that plaintiff had not sustained her burden of proof on the issue of the causal relationship between the injury and the conversion reaction. Thus, there was not sufficient evidence to warrant an award of permanent and total disability benefits.

It is undisputed that plaintiff sustained an injury to her back during the course of her employment. A myelogram revealed plaintiff had lesions at vertebrae L4-5 and L5-S1 suggesting herniated discs. It is likewise undisputed that the paralysis from which plaintiff suffers is out of proportion to the indications

given by the myelogram, and is a result of a "hysteric conversion reaction." The issue to be determined on this appeal is whether the compensation court erred in determining that a causal nexus between the injury and the conversion reaction had not been proven. This requires an examination of the medical testimony in the record regarding the causation issue.

A conversion reaction occurs when a person who is under some type of stress handles anxiety by developing a physical defect. There is no organic basis to explain the disorder exhibited. Compensation may be recovered for emotional or psychological conditions which are proximately caused by a work-related injury and result in disability. *Lee v. Lincoln Cleaning & Dye Works,* 145 Neb. 124, 15 N.W.2d 330 (1944); *Davis v. Western Electric,* 210 Neb. 771, 317 N.W.2d 68 (1982); *Erving v. Tri-Con Industries,* 210 Neb. 339, 314 N.W.2d 253 (1982). Issues of causation in compensation cases are to be determined by the finder of fact. *Hyatt v. Kay Windsor, Inc.,* 198 Neb. 580, 254 N.W.2d 92 (1977); *Aguallo v. Western Potato, Inc.,* 208 Neb. 66, 302 N.W.2d 41 (1981).

The findings of fact made by the compensation court after rehearing will not be set aside unless clearly wrong. *Davis v. Western Electric, supra.* Where there is not sufficient competent evidence in the record to warrant the order or judgment of the compensation court, or the findings of fact do not support the same, the Supreme Court must modify, reverse, or set aside the decision of the compensation court. Neb. Rev. Stat. § 48-185 (Reissue 1978); *Davis v. Western Electric, supra; Riha v. St. Mary's Church & School, Inc.,* 209 Neb. 539, 308 N.W.2d 734 (1981).

In the present case the plaintiff's condition was evaluated by several physicians. The depositions of these doctors were received in evidence at the rehearing.

Dr. Wendell Fairbanks, a physician who regularly examined defendant's employees when they sustained injuries on the job, examined plaintiff 7 days after her accident. Plaintiff testified that she had worked full shifts on the 2 days following the accident, but was in pain. She did not return to work after that time. When she was seen by Dr. Fairbanks, she complained of numbness in her leg. He hospitalized her at that time. Her condition did not improve, and by July she had little mobility in her legs. Dr. Fairbanks diagnosed her condition as a conversion reaction. He had no opinion as to the nature of the triggering mechanism for the reaction.

Dr. Louis J. Gogela, a neurosurgeon, examined plaintiff at the request of Dr. Fairbanks. He hospitalized her. Dr. Gogela testified that the paralysis was psychogenic in origin, as there was no apparent organic cause. Dr. Gogela testified that persons exhibiting a particular personality pattern are predisposed to this type of problem. He was unable to formulate an opinion as to whether this paralysis was due to a preexisting personality pattern, or an opinion as to how much effect the injury may have had in bringing about the conversion reaction.

Dr. Richard C. Sposato, a medical neurologist, examined plaintiff at the request of Dr. Gogela. He diagnosed her condition as paraparesis of a conversion reaction type. He testified that, in his opinion, there was no relationship between the on-the-job injury and the paraparesis. He testified he did not have an opinion as to what the triggering mechanism was.

Dr. Sposato requested a psychologist, Dr. Vernon Fisher, to read the Minnesota Multiphasic Personality Inventory (MMPI) which the nursing staff administered to plaintiff. This is a broad-range personality test measuring different aspects of, for example, mood and behavior. Dr. Fisher's diagnostic impression, after he read plaintiff's MMPI, was that she was suffering from "psychophysiologic or con-

version disorder with mild to moderate depression and anxiety in a dependent, hysteroid personality." Dr. Fisher did not have an opinion as to the cause of her paralysis, but he felt that the test indicated a predisposition for this type of event.

Plaintiff was also examined by Dr. Ernest W. Beehler, a neurosurgeon. He hospitalized her. He diagnosed plaintiff as suffering from a conversion reaction. He testified to the following: "Q. And, doctor, did you have an opinion based upon reasonable medical certainty as to the cause of the functional overlay [conversion reaction]? A. I think you're getting into the realm of psychiatry there. Q. So you have no opinion? A. Well, sort of, but I think a psychiatrist might feel differently. But we see some people who have organic problems who don't handle them well and then start adding a lot of frosting either because somebody doesn't pay enough attention to them or they're not getting the situation corrected soon enough. So this — I think that in her case it was related to the original problem." Dr. Beehler also testified, "Had it not been for the injury she wouldn't have had the conversion reaction."

Dr. Beehler was of the opinion that the paralysis may have been a means of holding her husband. He felt that this marital problem was a factor but was not directly related to the conversion reaction.

Dr. Jack D. Hornby, a psychiatrist, read another MMPI answered by the plaintiff, and examined her records. He testified that plaintiff was predisposed to suffering a conversion reaction. He stated that "It is quite possible chronologically, that the injury that she suffered at the Electric Hose & Rubber Factory could have contributed to a — to the development of this type of neurotic disorder which she was predisposed to prior to the injury." Dr. Hornby had never met with plaintiff.

Plaintiff was also examined by Dr. William T.

Warmath, a neurosurgeon. He did not have an opinion as to the cause of plaintiff's disorder.

This review of the evidence reveals that Dr. Fairbanks, Dr. Gogela, Dr. Fisher, and Dr. Warmath were unable to formulate an opinion as to the cause of plaintiff's condition. Dr. Fisher did state that she had a predisposition to this type of event. Dr. Sposato testified that he did not know what had caused the conversion reaction, but it was his opinion that her paralysis was not related to her employment injury. Dr. Beehler testified that there was a relationship but added the disclaimer, "I think a psychiatrist might feel differently." Dr. Hornby, a psychiatrist who had never examined or met with the plaintiff, testified that there was a possible chronological relationship between the injury and the conversion reaction. Dr. Hornby testified in qualified terms: "It is quite possible . . . that the injury . . . could have contributed" to the reaction.

The plaintiff was required to prove by a preponderance of the evidence that her disability was the result of a work-related accident. *Riha v. St. Mary's Church & School, Inc.,* 209 Neb. 539, 308 N.W.2d 734 (1981). Where there is nothing more than conflicting medical testimony, this court will not substitute its judgment for that of the Workmen's Compensation Court. *Id.* In the present case the finding that plaintiff did not meet her burden of proof is supported by the record. The finding that there was no causal relationship between her employment and the conversion reaction is supported directly by the testimony of Dr. Sposato. The decision of the compensation court was not clearly wrong.

Plaintiff had been paid compensation for 9 weeks of temporary total disability at the time of the rehearing. The compensation court found that it could not determine without indulging in speculation and conjecture the extent of disability resulting from the injury beyond that period due to the presence of the

conversion reaction. An award of compensation can not be based on speculation and conjecture. *Erving v. Tri-Con Industries,* 210 Neb. 339, 314 N.W.2d 253 (1982); *McCann v. Holy Sepulchre Cemetery Assn.,* 205 Neb. 444, 288 N.W.2d 45 (1980). The award requires the defendant to provide any future medical care necessitated by the back injury. Dr. Beehler had indicated that he would have performed surgery on the injury demonstrated on the myelogram but for the conversion reaction. The award made is supported by the record.

Plaintiff also assigns as error the failure to tax the cost of the deposition of Dr. Hornby, taken on behalf of plaintiff, to the defendant as costs. The court ordered the defendant to pay the costs of the depositions of Drs. Fairbanks and Beehler. The deposition of Dr. Beehler had been taken in defendant's behalf. The plaintiff claims that the failure to award the cost of the Hornby deposition was an oversight.

Under the circumstances of this case we believe the cost of the deposition of Dr. Hornby should be taxed to the defendant as costs. The judgment is, in all other respects, affirmed.

AFFIRMED AS MODIFIED.