DANNY STARR, APPELLANT, V. SWIFT & COMPANY, APPELLEE.

353 N.W.2d 1

Filed August 3, 1984.    No. 83-724.

Robert C. Wester of Schirber Law Offices, P.C., for appellant.

Richard M. Dustin of Gaines, Otis, Haggart, Mullen & Carta, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an appeal from the Nebraska Workmen's Compensation Court. The claimant, Danny Starr, alleged in his petition that he sustained an injury in an accident on June 16, 1982, arising out of and in the course of his employment by Swift & Company (Swift). He further alleged the injury was an aggravation of a preexisting asymptomatic arthritic condition of his back.

Starr claimed the injury occurred when he bent over to pick up an unskinned ham and his back snapped. Swift answered, alleging that if claimant suffers from any condition, it was the result of a natural progression of a preexisting condition not resulting from an injury caused by an accident arising out of and in the course of his employment.

On rehearing, a three-judge panel vacated an earlier single-judge order and found the claimant had failed to sustain the burden of showing his alleged condition resulted from or was aggravated by an accident arising out of and in the course of his employment by Swift. The court dismissed the petition and set aside the award.

Starr appeals, asserting the court was clearly wrong in dismissing the petition, and assigning as error that the

three-judge panel's decision was contrary to the evidence presented. We find the court was correct and affirm its ruling.

Starr testified that he was a ham skinner for Swift and on June 16, 1982, felt a sharp pain in his back when he bent down to pick up a loose ham. The incident was reported to the production manager, and after a break, Starr completed his shift. On June 18, 1982, Starr sought permission from the plant nurse to visit his physician, Dr. John Monson, concerning his hand, for which he had been receiving treatment. Starr also told the nurse that he had felt a little pull in his back, but did not state it was a result of the June 16 incident.

Dr. Monson, a general surgeon, had been treating Starr for various ailments since May 1981. Dr. Monson had performed hernia surgery on Starr on June 2, 1981, had removed a cyst in November of 1981, had done surgery on his finger in December 1981, and had removed a foreign body in his left arm in May of 1982. Dr. Monson saw Starr again on June 18, 1982. Dr. Monson examined Starr's hand, which Monson had treated previously. X-rays of Starr's back were then taken. The film failed to disclose any injury to the back, and a diagnosis of a strain or spasm was made. A muscle relaxant and Tylenol were prescribed. Dr. Monson has not seen Starr since the June 1982 visit, and testified Starr did not appear to have severe back pain and was advised he could return to work.

On September 20, 1982, Starr saw Dr. Leroy Lee, a urologist, who testified Starr complained of pain he had endured for 4 days. Starr related a past history of severe kidney injury 28 years previous, from an automobile accident. Dr. Lee testified that Starr told him that his back pain had begun 3 or 4 days before, without any significant history of trauma or other initiating events. Starr denied this statement in his testimony.

Starr also testified that he had arthritis of the spine for many years. According to Dr. Lee, the June 18, 1982, incident was never mentioned by Starr at his September 20 visit. Dr. Lee hospitalized Starr, suspecting a kidney problem, but none was found. Instead, the problem was diagnosed as musculoskeletal pain, which usually abates on its own with aspirin treatment. Dr. Lee did not feel Starr was in severe pain, and required no followup visits.

Dr. Lee referred Starr to Dr. Richard Forsman, who specializes in internal medicine, and he saw the patient on September 28, 1982. Suspecting a herniated disk, he hospitalized Starr for a myelogram. A CAT scan was also conducted, and after consulting Dr. John Greene, a neurological surgeon, Dr. Forsman felt that a bulging herniated disk was causing the pain. When questioned as to the cause of Starr's injury, Dr. Forsman testified:

Q Do you have an opinion based on a reasonable degree of medical certainty as to the cause of that particular injury?
A No.
Q Now when you treated Mr. Starr these various times, did you detect an arthritic condition of the back?
A Yes.
Q Have you formed an opinion based on a reasonable medical certainty as to whether the incident on January (sic) 16, that Mr. Starr described concerning lifting at work causing pain, aggravated the arthritic condition that you found?
A It certainly could be very possible.
Q Do you think it is probable?
A That's a hard one to answer a yes or a no.
Q Pardon me?
A That's a hard one to answer a yes or a no. It's very possible. I'll leave it that way.
Q Well, in your best opinion, based on a reasonable degree of medical certainty. I'm not asking for 100 percent, but just based on a reasonable degree of medical certainty, do you think that the incident on June 16 aggravated the arthritic condition that you found in Mr. Starr?
A Yes.

On cross-examination he testified:

Q Now can you tell us what other things might account for the same symptoms that he might have when he is seeing you several months later?
A This could be any sort of trauma to the back, any straining situation, a jolt to the back. I've seen many — a variety of things that will cause these — the onset of the symptoms.

Q And is that the reason why you said that there was a problem with answering the question "yes" or "no" in regard to that?

A Yes.

Dr. Greene testified he saw Starr in January 1983. His opinion was that Starr had a herniated fourth lumbar disk, caused by "lifting something in May, if I'm correct, of 1982." He based his opinion on the history he received and on the results of the CAT scan. Dr. Greene did not testify as to causation with regard to any particular incident arising out of Starr's employment with defendant.

Dr. Werner Jensen, an orthopedic surgeon testifying on behalf of Swift, stated he saw Starr on January 19, 1983. Dr. Jensen, after reviewing the X-rays taken under Dr. Lee, was of the opinion Starr suffered from spurring between the 11th and 12th dorsal vertebrae, which is sometimes mistakenly referred to as arthritis. This spurring is a degenerative condition from "wear and tear." Jensen testified spurring is located in the kidney area, and not in the lower back where disk problems occur.

Jensen stated the degeneration occurs over a period of years and the pain felt by Starr would be back sprain or spasm. In Dr. Jensen's opinion the ham-lifting incident did not affect the spurring and Starr's back problems are not due to one lifting incident. Dr. Jensen stated that with rest and conservative treatment Starr should feel better.

Starr testified that after seeing Dr. Monson in June 1982 he returned to work the following Monday and worked through the month of August. In June 1982 he had a grievance hearing over not receiving workmen's compensation for a hand injury. He did not mention any back problems at this meeting.

On July 14, 1982, there was a compensation hearing on a hernia claim by Starr. He testified he made no complaint regarding his back because it was not bothering him at that time.

In reviewing workmen's compensation cases this court is not free to weigh facts anew. The findings of the compensation court have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. Every

controverted fact must be resolved in favor of the successful party, and such party should have the benefit of every inference that can be drawn therefrom. *Davis v. Western Electric*, 210 Neb. 771, 317 N.W.2d 68 (1982).

The burden of proof is on the claimant to show a causal connection between the accident suffered by him and the alleged disability. *Caradori v. Frontier Airlines*, 213 Neb. 513, 329 N.W.2d 865 (1983). The presence of a preexisting disease or condition enhances the degree of proof required to establish that the injury arose out of the employment. *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 308 N.W.2d 734 (1981).

The evidence presented was sufficient for the compensation court to find that Starr had a history of arthritis which caused degeneration. In addition, Starr suffered from kidney and hernia injuries which the court could have found contributed to the degeneration and pain he was experiencing. None of the medical experts unequivocally attributed claimant's pain to the ham-lifting incident on June 16, 1982.

The conflicting medical testimony presented a question of fact to be resolved by the compensation court. That issue was resolved against the claimant. We state again that this court will not substitute its judgment for that of the compensation court where there is nothing more than conflicting medical testimony. *Ceco Corp. v. Crocker*, 216 Neb. 692, 345 N.W.2d 20 (1984); *Van Winkle v. Electric Hose & Rubber Co.*, 214 Neb. 8, 332 N.W.2d 209 (1983); *Riha v. St. Mary's Church & School, Inc.*, *supra; Keith v. School Dist. No. 1*, 205 Neb. 631, 289 N.W.2d 196 (1980).

The three-judge panel was not clearly wrong in finding the claimant failed to prove that his back pain resulted from or was aggravated by the single incident on June 16, 1982. We affirm the order dismissing claimant's petition.

AFFIRMED.