LESLIE JOHNSTON, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.
PHYLLIS JOHNSTON, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.
STATE OF NEBRASKA, APPELLANT, V. PHYLLIS JOHNSTON, APPELLEE.

364 N.W.2d 1

Filed March 8, 1985. Nos. 83-965, 83-966, 84-027.

M.J. Bruckner of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellants and appellees Johnstons.

Paul L. Douglas, Attorney General, and Martel J. Bundy, for appellant and appellee State.

KRIVOSHA, C.J., HASTINGS, and GRANT, JJ., and McCOWN, J., Retired, and WARREN and BLUE, D. JJ., and COLWELL, D.J., Retired.

KRIVOSHA, C.J.

Pursuant to stipulation of the parties and with the consent of the court, the parties consolidated for purposes of appeal two tort cases (cases Nos. 83-965 and 83-966) and one workmen's compensation case (case No. 84-027), all arising out of the same occurrence.

On June 12, 1981, Phyllis Johnston was employed as a secretary to the Honorable Donald Brodkey, then one of the members of the Supreme Court of Nebraska. With the permission of Justice Brodkey, Mrs. Johnston took a late lunch hour and returned to her office at approximately 1:50 p.m. Upon reentering the building and before returning to her office, she proceeded to the statehouse cafeteria. The statehouse cafeteria is a facility operated by the division of rehabilitation services of the State Department of Education and is open to the general public. Mrs. Johnston proceeded to a coffee urn, where she drew in a Styrofoam cup what she thought was a cup of coffee and, after paying for the coffee, then proceeded to her office. She sat down at her desk and, while visiting with the judge's law clerk, began to drink the coffee. She suddenly realized that what she was drinking was not coffee and immediately returned to the cafeteria. It was then determined that the urn from which Mrs. Johnston had drawn the coffee had just been cleaned with urn cleaner and

that what she had ingested was not coffee but, rather, urn cleaner. After Mrs. Johnston was given some grapefruit juice, which was a prescribed antidote for the urn cleaner, she called her doctor and went to see him. Mrs. Johnston's testimony as to how the accident happened was essentially confirmed by the law clerk.

Mrs. Johnston was diagnosed by her physician as having caustic mouth and pharynx irritation. Endoscopic examinations performed by a gastroenterologist on June 19, 1981, resulted in a finding of injury caused by alkali ingestion, with minimal superficial erosions of the lower esophagus and minimal superficial erosion of the duodenal bulb.

Mrs. Johnston continued to experience difficulty and was hospitalized at St. Elizabeth Community Health Center from November 14 to 16, 1981. Because Mrs. Johnston was experiencing emotional difficulty by reason of the accident, the gastroenterologist recommended that Mrs. Johnston be seen by a psychiatrist. The psychiatrist examined Mrs. Johnston on December 14, 1981, and observed that since the ingestion of the urn cleaner, in addition to the esophageal and gastric problems, Mrs. Johnston had difficulty with panic attacks, anxiety, and subtle symptoms of depression. The psychiatrist placed Mrs. Johnston on an antidepressant called Asendin. She remained on the medication until December 29, 1981, when, unable to contact the original psychiatrist, she saw a second psychiatrist. At the trial the second psychiatrist testified that in his opinion Mrs. Johnston was suffering from a posttraumatic stress disorder caused by the accidental swallowing of the urn cleaner. As a result of his diagnosis, Mrs. Johnston was placed in a program of psychotherapy. Mrs. Johnston was seen by the psychiatrist every 2 weeks until the summer of 1982.

Shortly after Memorial Day 1983, Mrs. Johnston, on the advice of her physician, terminated her employment with the court. Testimony was produced through Justice D. Nick Caporale, Justice Brodkey's successor, that if Mrs. Johnston had not resigned, he would have been required to discharge her because the quality of her work had seriously deteriorated. She has been unemployed since that time. Subsequently, Mrs. Johnston filed a petition in the district court for Lancaster

County, Nebraska, seeking to recover for her alleged injuries pursuant to the provisions of the Nebraska State Tort Claims Act, Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 1981). Mrs. Johnston's husband, Leslie, also filed a suit in the district court for Lancaster County, Nebraska, pursuant to the State Tort Claims Act, seeking damages for medical bills and loss of companionship, comfort, and society.

While the tort cases were pending but inactive, the State of Nebraska filed a petition in the Nebraska Workmen's Compensation Court pursuant to the Nebraska Workmen's Compensation Act, Neb. Rev. Stat. §§ 48-101 et seq. (Reissue 1984), alleging that Mrs. Johnston's injuries were covered by the workmen's compensation laws of the State of Nebraska. In a bifurcated proceeding the Workmen's Compensation Court found that Mrs. Johnston's injury arose out of and in the course of her employment and was therefore covered by the Workmen's Compensation Act. On rehearing before a three-judge panel, the judgment was affirmed, with one judge dissenting.

The compensation court then proceeded to hold a hearing on the issue of damages. A single judge of the Workmen's Compensation Court held that because Mrs. Johnston had continued to work at her usual job from the time of the alleged injury through the date of the first hearing on damages, she was not entitled to any disability payments. On appeal to the three-judge panel, by which time Mrs. Johnston had terminated her employment, an award was entered in favor of Mrs. Johnston for certain medical bills and for temporary total disability. The compensation court determined that Mrs. Johnston did not suffer any disability for the first 27 months after her accident, but because she became totally disabled on September 1, 1983 (the day she resigned from her job), and would remain temporarily totally disabled for an indefinite amount of time into the future, she was entitled to receive total temporary disability until the situation changed.

In the time between the first hearing on damages in the Workmen's Compensation Court and the rehearing, the state tort claims actions in the district court for Lancaster County, Nebraska, were completed. Following trial, the district court

held that the State was liable to Mrs. Johnston in the amount of $40,000. On the same date, the district court also entered judgment for medical bills and loss of companionship in favor of Mr. Johnston in the amount of $15,227.15. Both Mrs. Johnston and Mr. Johnston have appealed those decisions, maintaining that the awards of damages in the district court were clearly inadequate and are contrary to the evidence and to the law. For reasons which we will more particularly set out hereinafter, we conclude that the district court for Lancaster County, Nebraska, was without jurisdiction in these cases and that the Johnstons could not recover under the provisions of the Nebraska State Tort Claims Act because Mrs. Johnston's exclusive right of recovery was pursuant to the Nebraska Workmen's Compensation Act.

The State, on the other hand, appeals the decision of the Workmen's Compensation Court, arguing that while the accident arose out of and in the course of Mrs. Johnston's employment, the evidence fails to disclose that she suffered any damages and, therefore, the award entered by the compensation court should be set aside. With that contention we do not agree.

The first question which we must address is whether the Nebraska Workmen's Compensation Act is the exclusive remedy available to Mrs. Johnston or whether she may accept the benefits of the Workmen's Compensation Act and, nevertheless, file suit under the State Tort Claims Act for any damages she claims to have sustained in excess of those for which she was compensated under the provisions of the Nebraska Workmen's Compensation Act. In support of that position the Johnstons argue that where an injured employee does not recover full compensation under the state workmen's compensation laws for all damages proximately caused by the employer's negligent act, the court should apply what has come to be known in a few jurisdictions as the "dual capacity" doctrine. According to the "dual capacity" doctrine, an employer may become liable to an employee in tort if, with respect to that tort, the employer occupies a position which places upon it obligations independent of and distinct from its role as an employer. See *Duprey v. Shane*, 39 Cal. 2d 781, 249

P.2d 8 (1952). Because of the language of the State Tort Claims Act, we need not reach that question.

The Nebraska Workmen's Compensation Act provides that it will be the exclusive remedy for injuries arising out of or in the course of employment. Section 48-148 provides:

> If any employee, or his dependents in case of death, of any employer subject to the provisions of sections 48-109 to 48-147 files any claim with, or accepts any payment from such employer, or from any insurance company carrying such risk, on account of personal injury, or makes any agreement, or submits any question to the court under said sections, such action shall constitute a *release* to such employer of *all* claims or demands at law, if any, arising from such injury.

(Emphasis supplied.) In *Marlow v. Maple Manor Apartments*, 193 Neb. 654, 657-59, 228 N.W.2d 303, 305-06 (1975), this court discussed the meaning of § 48-148, saying:

> The Workmen's Compensation Act provides the exclusive remedy by the employee against the employer for *any* injury arising out of and in the course of the employment. This is the basis on which the rights of employers and employees are put in balance. The employer, by having liability imposed on him without fault, receives in return relief from tort actions. Logically, therefore, where the employer is negligent he should not be relieved of liability where compensation coverage is not provided to the employee.
>
> . . . .
>
> . . . The operative fact is one of coverage, not of election to file a claim for compensation. If coverage exists, even though for some reason compensation may not be payable, the Workmen's Compensation Act is *exclusive*.

(Emphasis supplied.)

Additionally, § 81-8,219, which is a part of the State Tort Claims Act under which the Johnstons sought recovery in the district court, provides in part as follows: "(1) The provisions of this act shall *not* apply to: . . . (e) Any *claim* by an employee of the state which is covered by the Nebraska workmen's compensation law." (Emphasis supplied.) It is difficult to

conceive how the Legislature could have made it any clearer that where an employee has a claim subject to the Nebraska Workmen's Compensation Act, the employee may not file suit under the State Tort Claims Act.

The Johnstons argue that § 81-8,219 means that the State Tort Claims Act does not apply to the extent that payment is received under the Nebraska Workmen's Compensation Act, but is applicable for any excess damages claimed by reason of an employer's negligence. We simply cannot agree with that view.

Had the Legislature intended the result suggested by the Johnstons, it would have been relatively simple to so provide. However, by using the word "claim" when describing the exemption under § 81-8,219(e), the Legislature has clearly indicated that the Nebraska State Tort Claims Act, §§ 81-8,209 to 81-8,235, does not apply to any claim which is covered by the Nebraska Workmen's Compensation Act, §§ 48-101 et seq. The language of both §§ 48-148 and 81-8,219(e) makes the provisions of the Nebraska Workmen's Compensation Act the exclusive remedy in this case and disposes of Mrs. Johnston's claims brought pursuant to the State Tort Claims Act. In view of the facts that the State Tort Claims Act specifically bars actions which are otherwise covered by workmen's compensation laws and the Johnstons concede that Mrs. Johnston's claim is covered by the Nebraska Workmen's Compensation Act, we believe it unnecessary to consider the arguments regarding dual capacity. The State Tort Claims Act had no application and does not provide a basis upon which Mrs. Johnston could seek to recover damages. The district court was in error in assuming jurisdiction and entering an award, and the award must be set aside and the case dismissed.

That leaves us with the question of whether Mr. Johnston can maintain a separate action against the State for his alleged losses under the State Tort Claims Act. While we have not previously decided that question in this jurisdiction, a number of other states have had occasion to do so and have generally held that if the employee-spouse's right of recovery must be brought under the state workmen's compensation law or not at all, the nonemployee spouse may not impose liability upon the

employer.

In *Balcer v. Leonard Refineries, Inc.*, 370 Mich. 531, 534-35, 122 N.W.2d 805, 807 (1963), the Michigan Supreme Court said:

> "We are not unmindful, to paraphrase Mr. Justice Frankfurter and Judge Learned Hand, that the literal words of a statute sometimes can be misleading, and that we do not stop but only begin with the words. Sometimes the words are such that the purposes of the statute and the entire statutory scheme must be taken into account. *The words must be read and interpreted as a part of the whole.* (Emphasis supplied.)
>
> "*The history of the development of statutes, such as this*, creating a compensable right independent of the employer's negligence and notwithstanding an employee's contributory negligence, *recalls that the keystone was the exclusiveness of the remedy*. This concept emerged from a balancing of the sacrifices and gains of both employees and employers, in which the former relinquished whatever rights they had at common law in exchange for a sure recovery under the compensation statutes, while the employers on their part, in accepting a definite and exclusive liability, assumed an added cost of operation which in time could be actuarially measured and accurately predicted; incident to this both parties realized a saving in the form of reduced hazards and costs of litigation." (Emphasis supplied.)

And the Iowa Supreme Court in *Ziegler v. United States Gypsum Company*, 251 Iowa 714, 715-16, 102 N.W.2d 152, 153 (1960), said:

> These rights of recovery by the husband were all based upon the wife's right to recover for her direct injuries. Where the defendant is not guilty of a tort which would give a right of action to the wife, the husband cannot maintain an action for consequential damages. 41 C.J.S., Husband and Wife, section 401c, page 895; 27 Am. Jur., Husband and Wife, section 506, page 108; Shaw v. Boston American League Baseball Co., 325 Mass. 419, 90 N.E.2d 840; Thibeault v. Poole, 283 Mass. 480, 486-87, 186 N.E. 632; Peters v. Bodin, 242 Minn. 489, 65 N.W.2d 917; and

Naphtali v. Lafazan, 7 Misc.2d 1057, 165 N.Y.S.2d 395, 403.

And in 41 Am. Jur. 2d *Husband and Wife* § 451 at 379 (1968), the rule is stated as follows: "Generally a cause of action for loss of consortium of the wife does not exist in the husband unless the defendant would have been liable directly to the wife for her injury occasioning the loss of consortium."

And in *Peters v. Bodin*, 242 Minn. 489, 496, 65 N.W.2d 917, 922 (1954), the Minnesota Supreme Court, in rejecting a spouse's claim for loss of consortium, said:

> This instruction is in accord with the established rule that a husband's right to special damages for loss of his wife's services, or for medical and hospital expenses arising out of her injuries is derivative only, so that if she has no valid claim for such injuries, he is likewise without right to recover for such special damages.

In view of the fact that we have heretofore held that an employee's exclusive right of action for injuries arising out of and in the course of the employee's work must be brought pursuant to the Nebraska Workmen's Compensation Act, we are inclined to follow those jurisdictions which have held that if the injured employee does not have an independent cause of action, the injured employee's spouse cannot maintain an independent cause of action. Were we to hold otherwise, we would be rewriting the provision of § 48-148 which now provides that if payment is made to an employee following the filing of a claim, the employer is released from all claims. See *Vangreen v. Interstate Machinery & Supply Co.*, 197 Neb. 29, 246 N.W.2d 652 (1976). The district court should have rejected the claim of Mr. Johnston, and we must therefore reverse and remand with directions to dismiss case No. 83-965.

We are then left with the question of whether the workmen's compensation award was in error. We think not.

In commencing our review of the award, we are reminded that "[i]n reviewing findings of fact in workmen's compensation cases, this court is not free to weigh the facts anew. The findings of the compensation court have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong." *Doty v. Aetna Life & Casualty*, 217

Neb. 428, 431, 350 N.W.2d 7, 9 (1984).

The only question before us, therefore, is whether there is any evidence upon which the finders of fact could have reached their conclusion. We believe there is. There can be no question that Mrs. Johnston suffered an injury, no matter how slight, when she ingested the urn cleaner. The warning on the label made it clear that it was harmful to ingest, and, in fact, such harm did result. That Mrs. Johnston chose not to leave work immediately, but, nevertheless, continued in her employment, does not establish that she did not suffer an injury. The medical testimony was to the contrary, or at least the finders of fact could so conclude. There is further evidence in the record that as a result of the injury sustained when Mrs. Johnston drank the urn cleaner, she in fact suffered a psychological, work-related injury which prevents her from engaging in any employment. Both the gastroenterologist and the treating psychiatrist testified that the ingestion of the urn cleaner resulted in the psychological problems experienced by Mrs. Johnston. A workman is entitled to recover compensation for neurosis if it is a proximate result of his injury and results in disability. Where, as here, the evidence is sufficient to permit the triers of fact to find that the psychological injury is directly related to the accident and the employee is unable to work, the employee is entitled to be compensated. See, *Cardenas v. Peterson Bean Co.*, 180 Neb. 605, 144 N.W.2d 154 (1966); *Haskett v. National Biscuit Co.*, 177 Neb. 915, 131 N.W.2d 597 (1964); *Lee v. Lincoln Cleaning & Dye Works*, 145 Neb. 124, 15 N.W.2d 330 (1944). The State argues that one may not recover for workmen's compensation for mental injuries in the absence of a proven physical injury, citing to us *Bekelski v. Neal Co.*, 141 Neb. 657, 4 N.W.2d 741 (1942). While the State's citation is correct, the facts are not at all similar to the facts in *Bekelski*. As we have already noted, in the instant case there is clear evidence of a physical injury occasioned when Mrs. Johnston ingested the cleaner. We believe that we are not able to say as a matter of law that there was no evidence upon which the compensation court could base its findings. Being unable to do so, we are required to affirm the decision. For that reason the decision of the Workmen's Compensation Court in case No. 84-027 is

affirmed, and the decisions of the district court for Lancaster County, Nebraska, in cases Nos. 83-965 and 83-966 are reversed and remanded with directions to dismiss.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.