ARTHUR KRAFT, APPELLEE, V. PAUL REED CONSTRUCTION & SUPPLY, INC., ET AL., APPELLANTS.

475 N.W.2d 513

Filed October 11, 1991.   No. 90-1202.

Steven W. Olsen, of Simmons, Olsen, Ediger & Selzer, P.C., for appellants.

G. Kirk Meade, of Nichols, Douglas, Kelly and Arfmann, P.C., for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

The defendant-appellant employer, Paul Reed Construction & Supply, Inc., and its insurer, defendant-appellant General Casualty Company, contend that the evidence does not support the 50-percent loss of earning power benefit the Nebraska Workers' Compensation Court awarded the plaintiff-appellee employee, Arthur Kraft. We affirm.

It is unquestioned that on July 14, 1987, the then 63-year-old Kraft was involved in an accident arising out of and in the course of his employment as a carpenter with Paul Reed Construction when he was kicked and punched by a fellow employee and caused to fall over a pile of lumber. As a consequence of the assault, Kraft suffered a variety of injuries, including internal bleeding, wounds to his head and to an elbow, and damage to the left bursa over the greater trochanter. The greater trochanter is the "bony prominence" of the femur,

or thigh bone, which can be felt just below the beltline on the hip. The bursa is "a thin, filmy sac that acts as a lubricant or a bearing . . . between bone and tendon." There is medical evidence that the permanent effects of Kraft's injuries are limited to a 10-percent permanent partial disability of his left leg. There is other medical opinion that Kraft's physical limitations amount to a 5-percent disability of the body as a whole. Because of the pain he claims to experience in his left hip and back, Kraft has not worked since the accident. In addition, he has significantly decreased his physical activity; he no longer fishes or hunts, and he avoids any exertion which requires bending, stooping, climbing, or lifting.

On December 11, 1989, approximately 2½ years after the accident and only 2 days before the initial hearing in this case, Kraft, for the first and only time, consulted a psychiatrist. The psychiatrist expressed the opinion that Kraft's continued pain was caused by the conversion of his psychological trauma into physical symptoms. In this witness' words:

> [S]ince [Kraft] sees things in physical terms, if his body worked he'd probably be able to say I could work and perhaps it wouldn't cause him the distress that I assume that it would. But I see so much of the secondary or accompanying psychiatric distress that I think it would be hard for him to do that with a sense of competence and confidence . . . .

The psychiatrist described Kraft's traumatic neurosis as an "extraordinary" reaction to the stress he has faced, and concluded that Kraft's prognosis was poor, explaining that "[i]f there was good physical restoration, in my opinion, he would still need psychiatric intervention, psychotherapy medications because my experience has been there would be yet another reason why he couldn't [work] or [work] well." In the psychiatrist's opinion, not only was Kraft's self-confidence shaken, but his "defenses have basically been overwhelmed," and, as a consequence, the psychiatrist did "not see him functioning in a competitive environment or workplace, particularly considering his age."

An employment counselor concluded that Kraft could not be rehabilitated, expressing the view that Kraft "is not employable

in the competitive labor market and would have a total loss of earning capacity." A physical therapist also questioned whether Kraft would ever be able to work again.

Defendants' claim of error is based on the contentions that as Kraft's permanent physical impairment is to the left leg alone, and because his complaints qualify as neither unusual nor extraordinary consequences of the injury to the leg, the resulting condition is compensable only as a partial disability of the leg as a scheduled member under the provisions of Neb. Rev. Stat. § 48-121 (Reissue 1988), and not as a disability of the body as a whole.

Section 48-121 provides that if a work-related injury is limited to a specific body member, a workers' compensation claimant is limited to the scheduled compensation provided under subsection (3) of the statute. See *Yager v. Bellco Midwest*, 236 Neb. 888, 464 N.W.2d 335 (1991). An exception to a subsection (3) specific-member injury exists when an unusual or extraordinary condition as to other members or other parts of the body has developed. In such an event, a claimant is entitled to compensation based on lost earning capacity as provided under subsection (1) or (2) of the statute. *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977). As recently observed, in the event of body-as-a-whole disabilities, the basis for compensation "is determined by the employee's diminution of employability or impairment of earning power or earning capacity, and is not necessarily determined by a physician's evaluation and assessment of the employee's loss of bodily function." *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 470, 461 N.W.2d 565, 573 (1990). However, "[g]eneral disabilities which are the normal, usual, and logical consequence of injuries to specific members" are compensable only according to the fixed statutory member schedule. *Mead v. Missouri Valley Grain, Inc.*, 178 Neb. 553, 559, 134 N.W.2d 243, 248 (1965).

In addition to physical impairments, psychological injuries are compensable. See, *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1 (1985); *Van Winkle v. Electric Hose & Rubber Co.*, 214 Neb. 8, 332 N.W.2d 209 (1983); *Lee v. Lincoln Cleaning & Dye Works*, 145 Neb. 124, 15 N.W.2d 330 (1944); *Davis v.*

*Western Electric*, 210 Neb. 771, 779, 317 N.W.2d 68, 73 (1982) ("a claimant may be allowed compensation for neurosis if it is a proximate result of her injury and results in disability"). In such cases, the burden is on the claimant to "prove by a preponderance of the evidence that his disability is the result of an accident arising out of his employment." *Riha v. St. Mary's Church & School, Inc.*, 209 Neb. 539, 542-43, 308 N.W.2d 734, 737 (1981).

Thus, assuming, but not deciding, that defendants are correct in contending that the evidence establishes a physical disability of the left leg alone, they cannot prevail unless it can be said as a matter of law that Kraft's traumatic neurosis is neither an unusual or extraordinary consequence of his leg injury nor otherwise compensable. While it is true that the psychiatrist testified that he was not "surprised" by Kraft's reaction to the injury and that Kraft himself testified that if he was physically fit he would return to work, there is the psychiatrist's testimony that Kraft's reaction, in comparison to that of an average person, was extraordinary. The psychiatrist emphasized Kraft's inability to understand his own psychological condition, noting that Kraft has a tendency to deny his inadequacies. Finally, the psychiatrist stated that Kraft would not be able to resume work, even if he had physically recovered, without psychological counseling.

Defendants next assert that an unusual or extraordinary condition must be physical in nature, and, consequently, a mental illness does not satisfy the exception. This argument ignores the clear language of this court. In *Cardenas v. Peterson Bean Co.*, 180 Neb. 605, 608, 144 N.W.2d 154, 157 (1966), we declared that "a workman is entitled to recover compensation for neurosis if it is a proximate result of his injury and results in disability." To substantiate their argument, defendants cite *Scamperino v. Federal Envelope Co.*, 205 Neb. 508, 513, 288 N.W.2d 477, 480 (1980), where this court stated that an unusual or extraordinary condition must be to "other members or other parts of the body." The court, however, has not interpreted this language so narrowly as to exclude psychological impairments. "Where . . . the evidence is sufficient to permit the triers of fact to find that [a]

psychological injury is directly related to the accident and the employee is unable to work, the employee is entitled to be compensated." *Johnston v. State, supra* at 466, 364 N.W.2d at 7. Contrary to defendants' contention, there is no requirement that the unusual or extraordinary condition be physical; the disabling condition must only be the proximate result of the work-related accident.

Defendants further argue that there is no causal relationship between the psychiatrist's diagnosis and Kraft's physical condition. It is true that $2^{1/2}$ years passed before any psychiatric diagnosis was made and that Kraft did not claim to be depressed or interested in psychiatric therapy. It is also true, however, that others identified symptoms of Kraft's neurosis prior to the psychiatrist's involvement. A rehabilitation specialist mentioned as early as July 29, 1988, that Kraft was "frustrated at his lack of progress." On January 24, 1989, an orthopedist observed that the "patient has developed some traumatic neuroses . . . ." The orthopedist noted, on October 24, 1989, that a "more serious effect on . . . Kraft results from his emotional response."

Physical injury and the subsequent stress similar to that suffered by Kraft has been found to be the proximate cause of traumatic neurosis:

> A conversion reaction occurs when a person who is under some type of stress handles anxiety by developing a physical defect. There is no organic basis to explain the disorder exhibited. Compensation may be recovered for emotional or psychological conditions which are proximately caused by a work-related injury and result in disability.

*Van Winkle v. Electric Hose & Rubber Co., supra* at 10, 332 N.W.2d at 210. The psychiatrist attributed Kraft's traumatic neurosis not only to his physical injury, but also to the psychological loss resulting from his immobility and inability to work, and expressly stated that Kraft's neurotic response was proximately caused by the injury.

As we have repeatedly pointed out, pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1988), the Supreme Court may modify, reverse, or set aside a Workers' Compensation Court decision

only when

> (1) the compensation court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud, (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact by the compensation court do not support the order or award.

§ 48-185. We have also held that the findings of fact made by the compensation court have the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong. *Cline v. County Seat Lounge, ante* p. 42, 473 N.W.2d 404 (1991). Moreover, in testing the sufficiency of evidence to support findings of fact made by the compensation court, the evidence must be considered in the light most favorable to the successful party. *Id.* Further, the compensation court, as the trier of fact, is the sole judge of the credibility of witnesses and weight to be given testimony. *Id.* In short, the Supreme Court may not substitute its judgment for that of the compensation court but, rather, "simply review[s] the decision for error." *Hare v. Watts Trucking Service,* 220 Neb. 403, 408, 370 N.W.2d 143, 147 (1985).

Under the state of the record, it cannot be said the compensation court's award was clearly wrong. Accordingly, we affirm and, pursuant to the provisions of Neb. Rev. Stat. § 48-125 (Reissue 1988), order that defendants pay Kraft the sum of $750 toward the services of his attorney in this court.

We also hereby establish a rule of practice and direct that in an appeal of any type of case filed after December 31, 1991, in this court or the Court of Appeals, any party who claims entitlement under the law or a uniform course of practice to an attorney fee shall, at the time of filing his, her, or its brief, also file a separate claim for such fees supported by an affidavit which justifies the amount sought.

AFFIRMED.