HEUANG SILIPHET, APPELLEE, V. IBP, INC., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, AND STATE OF NEBRASKA, SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLEE.
587 N.W.2d 895

Filed January 12, 1999.   No. A-98-209.

Gregory R. Coffey for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee State.

Michael P. Dowd, of Dowd & Dowd, for appellee Siliphet.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

INBODY, Judge.

This is an appeal of a workers' compensation case in which the decision by the trial judge was affirmed in part and remanded in part by the Workers' Compensation Court review panel. For the reasons set forth herein, we affirm the order of the review panel and remand for further proceedings consistent with this opinion.

## I. STATEMENT OF FACTS

Heuang Siliphet is a Laotian immigrant, born October 15, 1952. She does not speak English and cannot read or write in either English or Laotian. She began working for IBP, inc., in Lexington, Nebraska, in July 1991. On February 17, 1993, while washing and trimming beef tails during the scope and course of employment with IBP, Siliphet developed pain in her upper right back and right shoulder. She was examined by the company nurse on February 20 and was transferred to light duty, consisting of labeling boxes. Siliphet was subsequently treated by her family physician, Dr. Mark Jones, and she returned to her job of washing and trimming beef tails on April 26.

On July 7, 1993, Siliphet, still working with beef tails, twisted her left knee when turning to wash a knife in a sink. She was again seen by Dr. Jones, who suspected a subluxed kneecap. He put Siliphet on medication and told her to avoid climbing stairs, squatting, and similar activities. Siliphet was assigned to a different job at IBP, which still involved standing and stooping forward.

On August 10, 1993, Siliphet slipped on a bloody floor while leaving work for the day. She was taken to the hospital emergency room, complaining of right knee and lower back pain. She was sent home with icepacks and advised to see Dr. Jones. She returned to work at IBP in a restricted capacity. During that time, she continued to experience pain and was seen by an orthopedic surgeon, Dr. Rajesh Kumar, who ultimately referred her to an orthopedic surgeon, Dr. Chris Wilkinson.

On October 20, 1993, Dr. Wilkinson performed a left knee arthroscopy. Siliphet continued to be treated by Dr. Wilkinson, who, on June 6, 1994, diagnosed her with myofascitis and bilateral anterior cruciate ligament tears. He further recommended that she had reached maximum medical improvement, and he assigned a 16-percent impairment of the lower left extremity, a 21-percent impairment of the lower right extremity, and a 5-percent impairment of the whole person for loss of motion in her back. Siliphet began a work conditioning program at Company Care but stopped, because in the opinion of Company Care, the instability in her knees made it unsafe for her to continue. Siliphet has since been seen by Dr. Gordon Bainbridge, an orthopedic surgeon, as well as Dr. Jones.

Siliphet was also interviewed by two vocational rehabilitation consultants, Dean Venter and Alfred Marchisio, both of whom opined that she was unemployable as of the dates of those interviews. Another vocational rehabilitation consultant, Patricia Conway, also reviewed Siliphet's medical records. Although Conway did not expressly opine that Siliphet was totally disabled, she concluded that Siliphet could perform only sedentary work functions but that Siliphet lacks transferable skills to obtain such a position.

## II. FINDINGS AND HOLDINGS
## OF COURTS BELOW

The trial court found that Siliphet had suffered a back injury on February 17, 1993, while in the scope and course of employment with IBP, from constant repetitive motion but that she had no temporary or permanent disability as a result of that injury. The trial court further found that Siliphet had suffered an injury to her left knee on July 17, again while in the scope and course of employment with IBP. And the trial court found that Siliphet had injured her back and right knee on August 10, once again while in the scope and course of employment with IBP. The trial court further found that the injuries of August 10, combined with her preexisting injuries, resulted in permanent total disability. Finally, the trial court found that Siliphet had a 25-percent preexisting "loss of earning power because of the functional disability to her left lower extremity and her inability to read, write, or speak the English language."

The trial court awarded Siliphet temporary total disability benefits in the amount of $265 per week from October 20, 1993, to June 6, 1994; she was awarded $40.47 per week from June 7, 1994, for 34.4 weeks, for a 16-percent loss of the use of her left lower extremity; she was awarded $224.53 per week in permanent total disability benefits beginning June 7, 1994; and IBP was ordered to pay Siliphet's future medical expenses. Finally, the trial court held, as a matter of law, that the Second Injury Fund was not liable for any of those benefits.

Upon further review, the Workers' Compensation Court review panel affirmed the trial court's finding in its holding that Siliphet had injured her back on August 10, 1993, and that the August 10 injury aggravated a preexisting condition. The review panel further affirmed the trial court's finding that Siliphet is entitled to permanent total disability benefits. However, the review panel remanded those portions of the judgment relating to the liability of the Second Injury Fund, and remanded for a determination of the amount of temporary total disability benefits to which Siliphet is entitled and for a finding with respect to the credit to which IBP is entitled for indemnity benefits already paid.

## III. ASSIGNMENTS OF ERROR

IBP makes four assignments of error: (1) The Workers' Compensation Court erred in awarding permanent total disability benefits to Siliphet; (2) the Workers' Compensation Court erred in awarding Siliphet temporary total disability benefits at the rate of $265 per week from October 20, 1993, to June 6, 1994; (3) the Workers' Compensation Court erred in awarding Siliphet concurrent payments of permanent partial disability and permanent total disability; and (4) the Workers' Compensation Court erred in holding that the Second Injury Fund was not liable for any portion of the award to Siliphet.

The Second Injury Fund assigns as error the order by the review panel remanding to the trial court the issue of Second Injury Fund liability.

## IV. STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Snipes v. Sperry Vickers*, 251 Neb. 415, 557 N.W.2d 662 (1997); Neb. Rev. Stat. § 48-185 (Reissue 1993).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Winn v. Geo. A. Hormel & Co.*, 252 Neb. 29, 560 N.W.2d 143 (1997).

Upon appellate review, the findings of fact made by the trial judge have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Larson v. Hometown Communications, Inc.*, 248 Neb. 942, 540 N.W.2d 339 (1995). However, an appellate court is obligated to make its own determinations as to questions of law. *Winn v. Geo. A. Hormel & Co., supra.*

## V. ANALYSIS

### 1. Permanent Total Disability

As a workers' compensation claimant, Siliphet has the burden of establishing a causal relationship between her back injury and her employment. " ' "Where the claimed injuries are of such a character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science. . . ." The employee must show by competent medical testimony a causal connection between the alleged injury, the employment, and the disability.' " *Caradori v. Frontier Airlines,* 213 Neb. 513, 516-17, 329 N.W.2d 865, 867 (1983) (back injury). Accord *Paulsen v. State,* 249 Neb. 112, 541 N.W.2d 636 (1996).

IBP argues that the trial court erred in finding that Siliphet was permanently and totally disabled, because according to IBP, the evidence establishes only that she suffered injuries to one or more specific body members. As IBP correctly points out, where a work-related injury is limited to a specific body member, a workers' compensation claimant is limited to the scheduled compensation provided under Neb. Rev. Stat. § 48-121(3) (Reissue 1993), unless there are unusual or extraordinary consequences of that injury resulting in disability to the whole body. *Kraft v. Paul Reed Constr. & Supply,* 239 Neb. 257, 475 N.W.2d 513 (1991). Therefore, if the evidence was insufficient to support a finding that the August 10, 1993, fall resulted in injury to her body as a whole or that there were unusual or extraordinary consequences to the knee injury of that date, the trial court necessarily erred in finding that she was permanently and totally disabled.

No one disputes that Siliphet suffered an injury to her right knee on August 10, 1993, nor did the trial court find unusual or extraordinary consequences to that knee injury. Accordingly, the only issue is whether the evidence supports a finding that Siliphet suffered a back injury on August 10.

The trial court stated that its finding that the August 10 fall resulted in injuries to Siliphet's back was based on the hospital records of Tri-County Area Hospital District, Dr. Jones' records

of August 11; Dr. Kumar's records of September 1, 15, and 29; and Dr. Wilkinson's report of June 6, 1995. However, only the report by Dr. Wilkinson makes any finding as to a causal relationship. In that report, Dr. Wilkinson opined that it was his "opinion within a reasonable degree of medical certainty that [Siliphet] sustained or at least aggravated a pre-existing back injury as a result of her work activities, and then the subsequent fall of August 10, 1993."

IBP contends that this testimony lacks sufficient definiteness to support an award. Specifically, IBP asserts that Dr. Wilkinson's use of the word "or" makes this report ambiguous as to whether the August 10 incident caused the back injury or merely aggravated a preexisting condition. However, that purported ambiguity would have no effect on the outcome on this issue, since Siliphet would be entitled to permanent total disability benefits in either case. "[A] workers' compensation claimant may recover where an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that absent the preexisting condition no disability would have resulted." *Spangler v. State*, 233 Neb. 790, 795, 448 N.W.2d 145, 149 (1989), *overruled on other grounds, Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991).

IBP also argues that Dr. Wilkinson stated in subsequent reports that he could not testify with "any amount of medical certainty" that the August 10, 1993, incident aggravated the prior injuries. However, on closer examination, it is clear that in those later reports, Dr. Wilkinson addressed only the narrow question of whether the knee injury of August 10 aggravated preexisting knee conditions. The back injury issue is not addressed. Moreover, to the extent that those later opinions could be construed to possibly contradict the June 6, 1995, report, an expert witness' good faith self-contradiction presents a question of fact to be resolved by the Workers' Compensation Court. See *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d 597 (1991). We see no reason to second-guess the trial court on this issue. We accordingly reject this assignment of error.

## 2. Amount of Disability Benefits Awarded

### (a) Temporary Total Disability Benefits

IBP asserts that the award of $265 per week in temporary total disability benefits from October 20, 1993, to June 6, 1994, was too high. IBP argues that those benefits should be limited to two-thirds of Siliphet's average weekly wage (AWW) on the date of the injury causing the total disability. The review panel agreed with IBP and remanded for further findings on this issue.

We agree with the review panel on this issue. Section 48-121(1) provides that "[f]or total disability, the compensation [received] during such disability shall be sixty-six and two-thirds percent of the wages received *at the time of injury*, but such compensation shall not be more than the maximum weekly income benefit specified in section 48-121.01 . . . ." (Emphasis supplied.) The maximum weekly benefit set out in Neb. Rev. Stat. § 48-121.01 (Reissue 1993) is $265.

The trial court judge had found that Siliphet's AWW was $325.26 on July 7, 1993, and $336.81 on August 10, the dates of the respective injuries. He calculated two-thirds of each AWW and awarded her the sum of the two, reduced to the statutory maximum of $265. The net result is that Siliphet has been treated as though she suffered two episodes of temporary total disability, which is contrary to logic and the general principles underlying workers' compensation benefits for total disability. See, generally, 5 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 59.41(a) at 10-565 (1998) ("at a given moment in time, a person can be no more than totally disabled"). This matter appears to be one of first impression in Nebraska. However, the general issue was addressed by the Supreme Court of Kentucky in *Matney v. Newberg*, 849 S.W.2d 526 (1993). In that case, the court held that to award a benefit greater than the AWW on the date of injury

> would allow a claimant . . . to receive an award for more than 100% occupational disability. Such a result is contrary to the long-standing principle that a claimant may not, at one time, be compensated for more than total occupational disability because he can, in fact, be no more than totally, occupationally disabled.

849 S.W.2d at 527. We find this reasoning persuasive and, accordingly, hold that the trial court erred in awarding Siliphet temporary total disability benefits in an amount greater than two-thirds of a claimant's AWW at the time of the injury causing the temporary disability. We accordingly affirm the review panel in its order remanding to the trial court for further findings and entry of an appropriate award.

### (b) Concurrent Award of Permanent Partial and Permanent Total Disability Benefits

■ IBP similarly complains that the trial court erred by inappropriately awarding Siliphet "stacked" benefits for her left leg injury, awarding her 34.4 weeks of permanent partial disability benefits for her left leg in addition to the permanent total disability benefits. Brief for appellant at 7. However, the issue here is not a double award of total disability benefits, but, rather, the concurrent award of permanent partial disability and permanent total disability benefits. The Nebraska Supreme Court has held that nothing in the Nebraska Workers' Compensation Act prohibits an injured employee from receiving partial permanent and total permanent disability payments at the same time. *Anderson v. Omaha Pub. Sch. Dist.*, 254 Neb. 1007, 581 N.W.2d 424 (1998). Accordingly, we affirm the Workers' Compensation Court's order on this issue.

### 3. SECOND INJURY FUND LIABILITY

Both IBP and the Second Injury Fund appeal on the issue of Second Injury Fund liability. IBP appeals from the trial court's holding that, as a matter of law, the Second Injury Fund is not liable for any benefits owed Siliphet. The Second Injury Fund appeals from that portion of the order by the review panel remanding that issue for further findings.

Nebraska's Second Injury Fund statute, Neb. Rev. Stat. § 48-128 (Reissue 1993), provides:

> If an employee who has a preexisting permanent partial disability . . . which is or is likely to be a hindrance or obstacle to . . . obtaining employment or obtaining reemployment . . . and which was known to the employer prior to the occurrence of a subsequent compensable injury,

receives a subsequent compensable injury resulting in additional permanent partial or permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. For the additional disability, the employee shall be compensated out of . . . the Second Injury Fund . . . .

At issue in this case is the threshold at which Second Injury Fund liability is triggered. The applicable statutory provision, § 48-128(3), provides in pertinent part:

[P]reexisting permanent partial disability shall mean any preexisting permanent condition . . . of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining reemployment if the employee should become unemployed. *No condition shall be considered a preexisting permanent partial disability under this section unless it would support a rating of twenty-five percent loss of earning power or more or support a rating which would result in compensation payable for a period of ninety weeks or more for disability for permanent injury as computed under subsection (3) of section 48-121.*

(Emphasis supplied.)

The trial court read the emphasized section conjunctively, holding that Second Injury Fund liability would be incurred only where a preexisting condition would be deemed to support both a 25-percent loss of earning power and also to support a compensation award for a period in excess of 90 weeks. Accordingly, the trial court held that Second Injury Fund liability was not incurred, despite the trial court's finding that Siliphet had a 25-percent loss of earning power due to preexisting conditions, because there was no showing that the preexisting conditions would also result in compensation payable for a period in excess of 90 weeks. The review panel remanded on this issue,

directing that the trial court make further findings with respect to any liability of the Second Injury Fund.

■ The issue is one of statutory construction. The general rules of statutory construction require that statutory language is to be given its plain and ordinary meaning where possible, and when the words of the statute are plain, direct, and unambiguous, an appellate court should not indulge in interpretation. See *Memorial Hosp. of Dodge Cty. v. Porter*, 251 Neb. 327, 557 N.W.2d 21 (1996). An appellate court will, if possible, give effect to every word, clause, and sentence of a statute, since the Legislature is presumed to have intended every provision to have a meaning. See *id.* Finally, "[t]he components of a series or collection of statutes pertaining to a certain subject matter may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions of the act are consistent, harmonious, and sensible." *SID No. 2 v. County of Stanton*, 252 Neb. 731, 735-36, 567 N.W.2d 115, 118 (1997).

■ In light of the foregoing principles, we conclude that the Legislature intended two separate standards for Second Injury Fund liability, contingent upon the nature of the permanent preexisting condition. If the preexisting permanent condition was to the body as a whole, or if a preexisting scheduled member injury falls under the "unusual or extraordinary condition" exception, *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 260, 475 N.W.2d 513, 516 (1991), the Second Injury Fund is liable only if that permanent preexisting condition would have resulted in a 25-percent or more loss of earning capacity. However, if the preexisting permanent condition was to a scheduled member, the Second Injury Fund would be liable only if that permanent preexisting condition would result in compensation payable for a period of 90 weeks or more for disability for permanent injury as computed under § 48-121(3).

Because the trial court was laboring under a misapprehension of the applicable standards for imposing liability upon the Second Injury Fund, we affirm the review panel's order of remand which directed the trial court to make a determination as to Second Injury Fund liability pursuant to § 48-128(3). In

making such determination, the trial court shall take no additional evidence, but shall instead review the record to determine both the extent of member disability, and whether such member disability rises to the level of an unusual or extraordinary condition exception. *Kraft v. Paul Reed Constr. & Supply, supra.* If the trial court finds that Siliphet had a preexisting member disability that rises to the level of an unusual or extraordinary condition, then the extent of preexisting disability should be measured in terms of lost earning capacity as provided under § 48-128(1) or (2). Only in that situation does Siliphet's lack of English language skills become relevant, as a factor in determining her lost earning capacity. See *Mata v. Western Valley Packing*, 236 Neb. 584, 462 N.W.2d 869 (1990).

However, if Siliphet's preexisting condition is found to have been a scheduled injury which does not rise to the level of an unusual or extraordinary condition, then the measure of that preexisting disability is limited to the scheduled compensation provided for in § 48-121(3), and the presence or absence of industrial disability, including loss of earning capacity, employability, and lack of language skills, is immaterial. See *Jeffers v. Pappas Trucking, Inc.*, 198 Neb. 379, 253 N.W.2d 30 (1977).

## VI. CONCLUSION

For the reasons set forth above, we affirm the order of the Workers' Compensation Court review panel in its entirety, and remand the matter to the Workers' Compensation Court review panel for further proceedings consistent with this opinion.

AFFIRMED AND REMANDED FOR
FURTHER PROCEEDINGS.