EVELYN BEKELSKI, APPELLEE, V. O. F. NEAL COMPANY, APPELLANT.

4 N. W. (2d) 741

FILED JUNE 26, 1942. No. 31360.

*Gross & Crawford* and *James J. Gleason*, for appellant.

*Votava & McGroarty* and *Eugene F. Fitzgerald, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is an appeal from an award of compensation made in favor of the plaintiff and against the O. F. Neal Company, a corporation, under the Nebraska workmen's compensation law.

The evidence shows that Evelyn Bekelski, the plaintiff,

was employed on August 14, 1940, by the defendant as an elevator operator in the Farm Credit Building in Omaha at a wage of $15 a week. On that day, while plaintiff was operating the elevator, a passenger riding therein was caught between the floor of the elevator and the second floor of the building and killed. The record shows that plaintiff was lodged in the elevator with the dying man for some 30 minutes before the doors were broken in and his body removed. Plaintiff claims that the sight of this terrible accident and her proximity to it when it occurred resulted in an injury to her nervous system which constitutes permanent total disability, entitling her to benefits under the workmen's compensation law.

The record shows that plaintiff suffered shock so great to her nervous system that her recollection was hazy as to what happened, that she was in a state of extreme excitement when she was removed from the elevator and had lost all control of her emotions, that her heart beat was rapid and her blood pressure considerably higher and that it was necessary for her to remain in the hospital for several days thereafter. The evidence shows that she is still under a doctor's care and that further hospitalization is to be desired. Plaintiff suffered no physical injury to her person as a result of the accident, but has suffered pains in the head and back since the accident. The evidence is conclusive that plaintiff is unable to perform the work of an elevator operator, or similar work. We think the record establishes that plaintiff was totally disabled within the meaning of the compensation law when this case was heard.

Defendant contends, however, that plaintiff did not sustain a disabling injury within the meaning of the workmen's compensation law. Our statute defines an accident as follows: "The word 'accident' * * * shall * * * be construed to mean an unexpected or unforeseen event happening suddenly and violently * * * and producing at the time objective symptoms of an injury. The term 'injury' and 'personal injuries' shall mean only violence to the physical structure of the body * * * ." Comp. St. 1929, sec. 48-152.

That there was an unexpected or unforeseen event happening suddenly and violently cannot be successfully questioned. We think the record shows that objective symptoms of injury were present. The evidence conclusively shows that plaintiff was irrational and hysterical after the accident, her blood pressure was considerably higher and her pulse more rapid. Medical experts testified that, when examined, the pupils of her eyes were dilated, her posture was abnormal and she had tremors and an inability to walk in her usual manner. These are objective symptoms within the definition of that term as laid down by this court in *Manning v. Pomerene*, 101 Neb. 127, 162 N. W. 492, wherein we said: "Defendant's idea is that by objective symptoms are meant symptoms of an injury which can be seen, or ascertained by touch. We are of opinion that the expression has a wider meaning, and that symptoms of pain, and anguish, such as weakness, pallor, faintness, sickness, nausea, expressions of pain clearly involuntary, or any other symptoms indicating a deleterious change in the bodily condition may constitute objective symptoms as required by the statute." See, also, *Van Vleet v. Public Service Co.*, 111 Neb. 51, 195 N. W. 467.

In determining whether there was violence to the physical structure of the body, as required by the compensation law, we are confronted with a more perplexing problem. The primary purpose of the workmen's compensation act is to insure an employee against accidental injury arising out of and in the course of his employment. To accomplish this purpose the act should be liberally construed, not to find that liability exists without the required quantum of proof, but to include within the protection of the act by liberal interpretation all injuries arising out of and in the course of the employment which the act does not clearly exclude. A strict interpretation should not be resorted to in order to accomplish such exclusion. With this rule of construction in mind, can it be said that disabling shock and nervousness, when unaccompanied by an impairment of the physical structure of the body, is compensable under our compensation law?

The point here raised does not seem to have been passed on directly by this court. In referring to the decisions of other jurisdictions it must be borne in mind that the compensation laws of the various states differ widely in many essential respects. The diversity of public policy demonstrated by the differences in the various laws must be considered before decisions of other jurisdictions can be accepted as controlling precedents.

Our law defines the terms "injury" and "personal injuries" as meaning "only violence to the physical structure of the body." Many of the laws of other states do not include this provision and require only that the disability result from an accident arising out of and in the course of the employment. Such are the cases cited by appellee. We think that such cases are not applicable here.

It seems to us that the legislature required, not only that there should be an accident attended by objective symptoms arising out of and in the course of the employment, but that the accident must be accompanied by violence to the physical structure of the body. The language indicates a clear distinction between physical and bodily injury on the one hand and mental, nervous and psychiatric injury unaccompanied by violence to the physical structure of the body on the other. The plain import of the words used eliminates from the operation of the law disabilities resulting from mental disturbances, nervousness and psychiatric ailments when violence to the physical structure of the body cannot be established.

This question has been discussed by the Texas court of civil appeals in a case involving the workmen's compensation law of that state which requires that "harm or damage to the physical structure of the body" exist in order to make the disability compensable. The court in denying a similar claim said: "Whether the cases in the two lines as last above discussed may be entirely reconciled on principle, they all appear to proceed upon the theory that actual physical injury, internal or external, must be shown in a proper way before an inference legally may be drawn that the final re-

sult (in respect to which compensation is claimed) is attributable to an 'injury' originating in the employment. And, as indicated, most, if not all, of the cases from other jurisdictions include that postulate. In the present case there is absent the proof of 'injury' which was actually or assumedly present in the other cases." *Southern Casualty Co. v. Flores,* 1 S. W. (2d) (Tex. Com. App.) 260.

In *Industrial Commission v. O'Malley,* 124 Ohio St. 401, 178 N. E. 842, the court said in holding against the claimant: "If O'Malley's death was caused by excitement merely, it was not caused by any physical injury contributing to his death." See *Fesenbek v. City of Philadelphia,* 144 Pa. Super. 99, 18 Atl. (2d) 448.

It is clear to us that to be compensable an accident arising out of and in the course of the employment must be accompanied by damage to the physical structure of the body of the claimant. No damage to the physical structure of the body having been shown, the claim is not within the scope of the act. While the act should be construed liberally, as we have many times held, it should not be extended to cases which by plain language are excluded from its scope. We hold, therefore, that claimant, under the record before us, has no cause of action against the defendant.

REVERSED AND DISMISSED.

ROSE, J., dissenting.

The record and the opinion adopted properly show every element of a case for compensation, unless the claim of plaintiff is without merit because she failed to prove violence to the physical structure of her body as a result of the appalling accident. She was an employee of defendant. There was an accident while she was performing the duties of her employment. She was taken to a hospital as soon as she was extricated from the elevator. As a result of the accident she was instantly and permanently disabled from pursuing in the future the duties of her only occupation, the one in which she was engaged at the time of the accident, as shown by the testimony of experts. A purpose of the workmen's compensation law has been defined as follows:

"An outstanding purpose of the workmen's compensation law is to shift from the employee to modern industry the burden of economic waste or loss 'arising out of and in the course of his employment' as a result of his injury or death." *Tralle v. Hartman Furniture & Carpet Co.*, 116 Neb. 418, 217 N. W. 952.

In the present instance, the claim of plaintiff is clearly within the purposes of the workmen's compensation law, if not within its terms. It is rejected on the sole ground that she did not prove "violence to the physical structure of the body." It seems to me there is reason to question this conclusion. I am inclined to think that the lawmakers, by the use of the term "violence to the physical structure of the body," meant an animate body with a directing brain containing blood, sensitive nerves, fibers and convolutions. The brain is part of the physical structure of the body. Without it there could be no performance of an employee's duties. Accidental violence to the brain and resulting disability may be difficult to prove, but plaintiff was rational before the accident and irrational afterward. Her blood pressure was higher and her pulse more rapid. The pupils of her eyes were dilated and her posture abnormal. She had tremors and was unable to walk in her usual manner, all as properly indicated by the majority opinion, but it seems to me these results of the accident evidence "violence to the physical structure of the body," within the meaning of the compensation law.