Loree Zach et al., appellees, v.
Nebraska State Patrol, appellant.
710 N.W.2d 877

Filed March 21, 2006.    No. A-05-449.

Jon Bruning, Attorney General, and Lisa D. Martin-Price for appellant.

Terry M. Anderson and Steven M. Lathrop, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellees.

Inbody, Chief Judge, and Carlson and Cassel, Judges.

Carlson, Judge.

## INTRODUCTION

The Nebraska State Patrol appeals from an order of the Nebraska Workers' Compensation Court review panel reversing the trial court's determination that the third amended petition filed by Loree Zach, Andrew Zach, Preston Zach, Jordan Zach, Cody Zach, Siera Zach, Ariel Zach, and Parker Zach (appellees) failed to state a claim upon which relief could be granted pursuant to Neb. Ct. R. of Pldg. in Civ. Actions 12(b)(6) (rev. 2003).

## BACKGROUND

On May 28, 2004, appellees filed a third amended petition in the Workers' Compensation Court requesting that they be awarded benefits under the Nebraska Workers' Compensation Act. The third amended petition alleges that on September 27, 2002, decedent Mark Zach, who had been a trooper with the Nebraska State Patrol, was killed as a result of "a self-inflicted gun shot wound in an accident, or as a result of an occupational disease, arising out of and in the scope and course of [his] employment with [the Nebraska State Patrol,] which accident and/or occupational disease occurred/developed in Madison County, Nebraska."

Pertinent portions of the factual background section of the third amended petition are as follows:

5. That the events and facts relating to the accident/ occupational disease are as follows: Mark Zach was employed as a State Trooper and generally patrolled in an area including Madison County, Nebraska. On a date approximately two weeks prior to Zach's death, he stopped multiple suspects in Norfolk, Nebraska. In the course of investigating the activities of the suspects Zach found one of them to be armed with a pistol. Zach communicated the serial numbers from the handgun to a dispatcher. There was a miscommunication in the exchange between Zach and the dispatcher or an error on the part of one or the other of them the result of which was the failure to identify the handgun as stolen generally and specifically stolen from a sports store known as "Outdoors Unlimited". The consequence of failing to identify the handgun as stolen was that the suspects were not properly charged with possession of a stolen firearm and law enforcement was unable to take what would have been a lead in the "Outdoors Unlimited burglary" case and investigate whether the suspects were involved in that burglary or in possession of additional firearms which were stolen in the "Outdoors Unlimited burglary." These suspects were among those participants in a bank robbery in Norfolk, Nebraska (hereinafter "Norfolk bank robbery") during which several persons were murdered. The perpetrators of the "Norfolk

bank robbery" included two of the individuals stopped by Zach and involved weapons which had been stolen in the "Outdoors Unlimited burglary". The deaths which took place in the "Norfolk bank robbery" devastated the community of Norfolk where Zach resided. On the day following the "Norfolk bank robbery", Zach was summoned to the State Patrol offices where he was advised that the suspects in the "Norfolk bank robbery" included two of the individuals he had stopped two weeks earlier. He was further advised that the murders in the bank robberies were accomplished with guns stolen in the "Outdoors Unlimited burglary" and that there had been a miscommunication between himself and the dispatcher, the result of which was the failure to identify the handgun found on the suspects during the stop as a gun stolen from the "Outdoors Unlimited burglary". Upon being advised of the circumstances, Zach felt responsible for the murders in the "Norfolk bank robbery" and became very distraught.

6. [Appellees'] decedent suffered an "accident" resulting in a "personal injury" inasmuch as the sudden stimulus (i.e., being advised of the consequences of an error) caused Zach's brain to undergo physical changes which, in turn, led Zach to a state of mind which overroad [sic] his will to the extent that even knowledge of the consequences of the act of suicide did not prevent Zach from taking his own life.

7. That [appellees'] decedent suffered an "occupational disease" inasmuch as the exposure to the stress of his employment resulted in an identifiable mental disease which disease, in turn, led Zach to a state of mind which overrode his will to the extent that even knowledge of the consequences of the act of suicide did not prevent Zach from taking his own life; that the stress put upon Zach which led to his mental disease is due to causes and conditions which are characteristic of and peculiar to law enforcement inasmuch as law enforcement officers are repeatedly charged with the community's safety, repeatedly exposed to stressful situations and suffer a peculiar and extreme degree of stress when faced with the fatal consequences of their law enforcement activities.

On June 4, 2004, the Nebraska State Patrol (hereinafter appellant) filed a motion to dismiss appellees' third amended petition for failure to state a claim upon which relief can be granted under rule 12(b)(6). The pertinent portion of appellant's motion to dismiss is as follows:

> Specifically, [appellant] avers that [appellees'] claims against it are barred because [appellees] have not stated that decedent, Mark Zach, suffered a physical injury in an accident arising out of and in the course of his employment with [appellant]. The act of suicide, without an underlying injury to the employee's person, which injury, and the pain and/or depression resulting therefrom, later caused the injured worker to take his or her own life, is not an "accident" arising out of and in the course of employment as defined by the Nebraska Workers' Compensation Act. *See* [appellees'] Third Amended Petition, paragraphs 5-7.

On August 27, 2004, the trial court entered an order finding that appellees' third amended petition failed to state a claim upon which relief could be granted against appellant, and the trial court dismissed appellees' petition with prejudice. On September 8, appellees filed an application for review, asking the compensation court review panel to reverse the trial court's decision and reinstate the third amended petition. On February 28, 2005, the review panel entered an order reversing the trial court's decision and remanding the cause for trial on appellees' claim that decedent Zach suffered an injury from an accident and/or an occupational disease on September 27, 2002. Appellant now appeals the review panel's decision.

## ASSIGNMENTS OF ERROR

Appellant assigns, restated, that the review panel erred in (1) reversing the trial court's decision that appellees failed to state a claim upon which relief could be granted and (2) relying on *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991), as the basis for its decision.

## STANDARD OF REVIEW

■ This action involves a rule 12 motion to dismiss for failure to state a claim. A trial court's grant of a motion to dismiss

for failure to state a claim under rule 12(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Anderson v. Wells Fargo Fin. Accept.*, 269 Neb. 595, 694 N.W.2d 625 (2005); *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005).

## ANALYSIS

An employee is entitled to benefits under the Nebraska Workers' Compensation Act if personal injury is caused to an employee by accident or occupational disease arising out of and in the course of his or her employment. See Neb. Rev. Stat. § 48-101 (Reissue 2004). The term "accident" is defined in Neb. Rev. Stat. § 48-151(2) (Reissue 2004) as follows:

> Accident means an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury. The claimant has the burden of proof to establish by a preponderance of the evidence that such unexpected or unforeseen injury was in fact caused by the employment.

The term "occupational disease" is defined in § 48-151(3) as follows: "Occupational disease means only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment and excludes all ordinary diseases of life to which the general public is exposed." "Injury" is defined in § 48-151(4) as follows:

> Injury and personal injuries mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The terms include disablement resulting from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in such employment. The terms include an aggravation of a preexisting occupational disease, the employer being liable only for the degree of aggravation of the preexisting occupational disease. The terms do not include disability or death due to natural causes but occurring while the employee is at work and do not include an injury, disability, or death that is the result of a natural progression of any preexisting condition.

Appellant argues that the trial court appropriately found that "violence to the physical structure of the body" is a necessary element for either an "accident" or an "occupational disease" and that physical changes in decedent's brain do not constitute "violence to the physical structure of the body." The trial court noted that appellees pled alternative theories of recovery, to wit: an accident and an occupational disease. In its order of dismissal, the trial court found:

[W]hether the [decedent's] suicide is deemed an "accident" or an "occupational disease" the underlying condition that resulted in the [decedent's] suicide as alleged in the petition was mental stress. Mental stress whether it be deemed from an "accident" or an "occupational disease" must be accompanied by a prior physical insult to the physical structure of the body as required in Bekelski v. O.F. Neal Company, 141 Neb 657, 4 N.W.2d 741 (1942) where at page 290 the plaintiff is required to at least show that, "The appellant in this case had to produce at least some minimal evidence of actual physical injury."

The trial court also noted that appellees' petition alleges that when decedent was notified of the mistake in the gun serial numbers, this led decedent's " 'brain to undergo physical changes.' " The trial court held:

To the extent that the [appellees'] decedent's brain did undergo "physical changes" the changes must be proceeded [sic] by violence to the physical structure of the body. As a matter of law, the mere talking or being informed of a problem does not rise to the level of violence to the physical structure of the body as contemplated by the Nebraska Supreme Court in *Bekelski, supra.*

In *Bekelski v. Neal Co.*, 141 Neb. 657, 4 N.W.2d 741 (1942), the Nebraska Supreme Court reversed an award in favor of the employee, noting that the terms "injury" and "personal injuries" mean only violence to the physical structure of the body. The Supreme Court went on to state:

It seems to us that the legislature required, not only that there should be an accident attended by objective symptoms arising out of and in the course of the employment, but that the accident must be accompanied by violence to

the physical structure of the body. The language indicates a clear distinction between physical and bodily injury on the one hand and mental, nervous and psychiatric injury unaccompanied by violence to the physical structure of the body on the other. The plain import of the words used eliminates from the operation of the law disabilities resulting from mental disturbances, nervousness and psychiatric ailments when violence to the physical structure of the body cannot be established.

*Id.* at 660, 4 N.W.2d at 743.

In reversing the trial court's decision in the instant case, the review panel relied on *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991). In *Tarvin*, the employee experienced excessive pressure and stress at work due to disciplinary actions against him. His work was regularly monitored by supervisors, and fellow workers excluded him from social events and coffeebreaks. Finally, while en route to work one day, the employee became so filled with anxiety that he was unable to enter an elevator at work, and he had been unable to work since that incident. The employee filed a claim for workers' compensation benefits based on his disabling depression and anxiety, which he claimed were aggravated by his job-related mental and/or physical stresses, pressures, and activities. The employee had preexisting depression due to a prior non-work-related leg injury. At trial, one psychiatrist testified that job-related stress caused a neurochemical level in the employee's brain to become imbalanced, which prevented normal transmission of messages from the employee's brain. Another psychiatrist testified at trial that the employee's brain chemistry had not been altered or changed by the stress experienced at work. This psychiatrist concluded that there was no causal relationship between any job-related stress and the employee's present mental condition. The Workers' Compensation Court found that the employee failed to prove compensability of his condition, and the court dismissed the action.

On appeal, the Nebraska Supreme Court noted that the employee claimed he "suffered 'violence to the physical structure of the body,' since he suffered a biochemical alteration of his brain and because 'a contributing factor [in the] exacerbation of

his pre-existing anxiety and depression was increased pain in his gunshot leg caused by walking and carrying documents at work.'" *Tarvin*, 238 Neb. at 856, 472 N.W.2d at 731. The Supreme Court noted the different opinions as to the cause of the employee's mental condition and held that the record presented nothing more than conflicting medical testimony and that it would not substitute its judgment for that of the compensation court in such cases. The court affirmed the order dismissing the petition.

In the present case, appellees allege that decedent's brain underwent physical changes from the sudden stimulus of being advised of the consequence of an error. The review panel noted that in *Tarvin, supra*, the Supreme Court affirmed the dismissal of a petition claiming benefits due to stress and changes in the employee's brain, not because the employee failed to show violence to the physical structure of the body, but because there was a conflict in the evidence as to whether there was violence to the physical structure of the body. The review panel determined that the holding in *Tarvin, supra*, indicates that a trial with receipt of evidence is necessary when there is a claim that the brain underwent physical changes. The review panel concluded that in the instant case, "[w]hether or not physical changes in the brain constitute an injury can only be decided after receipt of evidence as to what happened to [decedent's] brain."

We agree with the review panel's conclusion that whether physical changes in decedent's brain constitute an injury, i.e., "violence to the physical structure of the body," is an issue to be determined after evidence is presented. Such a determination cannot and should not be made at this juncture. The only question before us is whether appellees' third amended petition states a claim upon which relief could be granted. Complaints should be liberally construed in the plaintiff's favor and should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005). See *Kellogg v. Nebraska Dept. of Corr. Servs.*, 269 Neb. 40, 690 N.W.2d 574 (2005). A complaint should not be dismissed merely because it does not state with precision all

elements that give rise to a legal basis for recovery. *Spear T Ranch, supra*, citing *Schmedding v. Tnemec Co., Inc.*, 187 F.3d 862 (8th Cir. 1999). As a practical matter, dismissal under rule 12(b)(6) should be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *Id.* Further, the Nebraska Workers' Compensation Act is to be given a liberal interpretation for the benefit of the claimant. See *Arbtin v. Puritan Mfg. Co.*, 13 Neb. App. 540, 696 N.W.2d 905 (2005). Accepting all of the allegations in the petition as true and drawing all reasonable inferences in favor of appellees, we determine that appellees' third amended petition does state a claim upon which relief could be granted such that it should not be dismissed pursuant to rule 12(b)(6). Appellees are entitled to an opportunity to produce evidence to show that the physical changes in decedent's brain constitute a compensable injury under the Nebraska Workers' Compensation Act. Accordingly, we determine that appellant's assignments of error are without merit, and we affirm the review panel's order of reversal.

## CONCLUSION

We affirm the order of the Workers' Compensation Court review panel reversing the trial court's determination that the appellees' third amended petition failed to state a claim upon which relief could be granted pursuant to rule 12(b)(6) and remanding the cause for trial.

AFFIRMED.

CASSEL, Judge, dissenting.

The crux of the issue is whether an allegation of "physical changes" to the brain is sufficient to allege a compensable "injury," which in turn requires "violence to the physical structure of the body." I would hold that it is not sufficient.

Because the right of recovery of workers' compensation benefits is purely statutory, see *Oham v. Aaron Corp.*, 222 Neb. 28, 382 N.W.2d 12 (1986), I begin by quoting the language of Neb. Rev. Stat. § 48-151(4) (Reissue 2004) as follows:

> Injury and personal injuries mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The terms include disablement

> resulting from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in such employment. The terms include an aggravation of a preexisting occupational disease, the employer being liable only for the degree of aggravation of the preexisting occupational disease. The terms do not include disability or death due to natural causes but occurring while the employee is at work and do not include an injury, disability, or death that is the result of a natural progression of any preexisting condition.

The appellees' argument recognizes that the act of suicide cannot constitute the "violence to the physical structure of the body" necessary to establish an "injury" within the meaning of the statute. Once there has been a compensable "injury," i.e., once the "violence to the physical structure of the body" has occurred, then it becomes possible that the subsequent act of suicide is a consequence naturally flowing from the injury. To supply the required allegation of "injury," the appellees depend upon the allegation of "physical changes" to Zach's brain.

In *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988), the Nebraska Supreme Court, in interpreting the statutory definition of "injury," adhered to the meaning attributed in *Bekelski v. Neal Co.*, 141 Neb. 657, 4 N.W.2d 741 (1942), to that language. The Supreme Court stated that the statutory language

> "indicates a clear distinction between physical and bodily injury on the one hand and mental, nervous and psychiatric injury unaccompanied by violence to the physical structure of the body on the other. The plain import of the words used eliminates from the operation of the law disabilities resulting from mental disturbances, nervousness and psychiatric ailments when violence to the physical structure of the body cannot be established."

*Sorensen v. City of Omaha*, 230 Neb. at 289-90, 430 N.W.2d at 698 (quoting *Bekelski, supra*). See, also, 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law §§ 56.04D and 56.06D[4] (2005) (stating that under § 48-151(2) and (4), claimant must suffer accident that causes violence to physical structure of body before mental impairment or disability may be compensable).

The *Sorensen* court also recognized that in *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1 (1985), the court implicitly reaffirmed the principles set out in *Bekelski*. In *Johnston*, the physical trauma and mental stimulus induced a physical injury, namely "minimal superficial erosions of the lower esophagus and minimal superficial erosion of the duodenal bulb." 219 Neb. at 459, 364 N.W.2d at 3.

I agree with the majority that we review de novo the trial court's grant of a motion to dismiss, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. See *Anderson v. Wells Fargo Fin. Accept.*, 269 Neb. 595, 694 N.W.2d 625 (2005). In the instant case, the appellees allege only "physical changes" to Zach's brain. Even where one draws all reasonable inferences in favor of the appellees and construes the language liberally in the appellees' favor, see *Spear T Ranch v. Knaub*, 269 Neb. 177, 691 N.W.2d 116 (2005), I do not agree that this allegation asserts "violence to the physical structure of the body."

Both the majority of this court and the Workers' Compensation Court review panel seem to have principally relied upon *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991). There is, however, a critical difference between the procedural posture in *Tarvin* and the situation in the instant case. In *Tarvin*, upon rehearing, the Workers' Compensation Court found that the employee failed to prove compensability of his condition and dismissed the action. The Nebraska Supreme Court, citing the standard of review then applicable to findings of fact made by the Workers' Compensation Court after rehearing—giving such findings the same force and effect as a jury verdict in a civil case and not setting aside such findings unless they are clearly wrong—affirmed the dismissal. Although the employee in *Tarvin* argued that he had suffered a biochemical alteration of his brain, the Supreme Court noted medical evidence that the stress from the employment produced no chemical alteration and that the employee's mental condition and resultant disability were attributable solely to the employee's condition before employment. The Supreme Court simply held that the Workers' Compensation Court's factual findings were not clearly erroneous; the *Tarvin* court did not state or hold that a biochemical

alteration of the brain constitutes violence to the physical structure of the body. It was not necessary for the court to consider that proposition in order to resolve the case, and the decision in *Tarvin* is not binding precedent in that regard. See *Blue Cross and Blue Shield v. Dailey*, 268 Neb. 733, 687 N.W.2d 689 (2004) (case is not authority for any point not necessary to be passed on to decide case).

The reasoning of the majority of this court, as well as the reasoning of the compensation court review panel, seems to me to ignore the significance of the word "violence" in the statutory definition of "injury." Since the decision of the Supreme Court in *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988), the Legislature has not substantively amended the definition of "injury" in the Nebraska Workers' Compensation Act. When judicial interpretation of a statute has not evoked a legislative amendment, it is presumed that the Legislature has acquiesced in the court's interpretation. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003), *disapproved on other grounds, Kimminau v. Uribe Refuse Serv.*, 270 Neb. 682, 707 N.W.2d 229 (2005). The reasoning of the *Sorensen* court, reiterating and confirming the interpretation from *Bekelski v. Neal Co.*, 141 Neb. 657, 4 N.W.2d 741 (1942), requires more than "physical changes." The physical structure of every human body is constantly changing. By adopting the definition of injury requiring "violence to the physical structure of the body," the Legislature required more than mere physical change to establish a compensable injury.

Because I disagree that the bare allegation of "physical changes" to Zach's brain is sufficient to set forth a claim of a compensable "injury," I respectfully dissent.