Loree Zach et al., appellees, v.
Nebraska State Patrol, appellant.
727 N.W.2d 206

Filed February 2, 2007.    No. S-05-449.

Jon Bruning, Attorney General, and Lisa D. Martin-Price for appellant.

Terry M. Anderson and Steven M. Lathrop, of Hauptman, O'Brien, Wolf & Lathrop, P.C., for appellees.

Jeffry D. Patterson, of Bartle & Geier Law Firm, for amicus curiae Nebraska Association of Trial Attorneys.

Dallas D. Jones and Jenny L. Panko, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for amici curiae Crete Carrier Corporation et al.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The issue presented in this appeal is whether a work-related injury caused by a mental stimulus is compensable under the Nebraska Workers' Compensation Act, Neb. Rev. Stat. §§ 48-101 to 48-1,117 (Reissue 1998 & Cum. Supp. 2002). Based upon long-established precedent, we conclude that it is not.

## BACKGROUND

Trooper Mark Zach of the Nebraska State Patrol died on September 27, 2002, as the result of a self-inflicted gunshot wound. His surviving spouse and children, whom we shall refer to as "claimants," brought this action for death benefits under the Nebraska Workers' Compensation Act. Claimants alleged that while on patrol in Madison County, Nebraska, approximately 2 weeks prior to his death, Zach stopped several persons and discovered that one of them was armed with a pistol. Zach communicated the serial number of the weapon to a dispatcher, but due to a miscommunication or error, the weapon was not at that time identified as stolen. Claimants alleged that the weapon and two of the individuals stopped by Zach were subsequently involved in a bank robbery in Norfolk, Nebraska, which resulted in multiple fatalities. Claimants alleged that on the day following the robbery, Zach was advised by State Patrol officials that two of the persons he had stopped were involved in the bank robbery; that weapons taken during a previous burglary were used in the robbery; and that due to a miscommunication at the time of the stop, there had been a failure to identify the pistol used in the robbery as one of

the weapons involved in the previous burglary. Claimants alleged that upon learning this, Zach felt responsible and became very distraught. In support of their claim for workers' compensation benefits, claimants alleged:

6. [Claimants'] decedent suffered an "accident" resulting in a "personal injury" inasmuch as the sudden stimulus (i.e., being advised of the consequences of an error) caused Zach's brain to undergo physical changes which, in turn, led Zach to a state of mind which overroad [sic] his will to the extent that even knowledge of the consequences of the act of suicide did not prevent Zach from taking his own life.

7. That [claimants'] decedent suffered an "occupational disease" inasmuch as the exposure to the stress of his employment resulted in an identifiable mental disease which disease, in turn, led Zach to a state of mind which overrode his will to the extent that even knowledge of the consequences of the act of suicide did not prevent Zach from taking his own life; that the stress put upon Zach which led to his mental disease is due to causes and conditions which are characteristic of and peculiar to law enforcement inasmuch as law enforcement officers are repeatedly charged with the community's safety, repeatedly exposed to stressful situations and suffer a peculiar and extreme degree of stress when faced with the fatal consequences of their law enforcement activities.

The trial judge of the workers' compensation court granted the Nebraska State Patrol's motion to dismiss, concluding that claimants had failed to state a claim upon which relief could be granted. The judge interpreted our decisions as requiring some physical stimulus before work-related mental stress can be a compensable injury, as the result of either an accident or an occupational disease. The judge concluded as a matter of law that "the mere talking or being informed of a problem does not rise to the level of violence to the physical structure of the body" as required by § 48-151(4) and our decision in *Bekelski v. Neal Co.*, 141 Neb. 657, 4 N.W.2d 741 (1942). A review panel of the workers' compensation court reversed, and remanded the case for trial, interpreting our opinion in *Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991), to require trial of any workers' compensation claim

alleging physical changes to the brain. The Nebraska State Patrol appealed.

In a two-to-one opinion, the Nebraska Court of Appeals affirmed. *Zach v. Nebraska State Patrol*, 14 Neb. App. 579, 710 N.W.2d 877 (2006). The majority agreed with the review panel's interpretation of *Tarvin*. The dissent did not read *Tarvin* to hold that a biochemical alteration of the brain constitutes violence to the physical structure of the body within the meaning of the Nebraska Workers' Compensation Act. The dissent reasoned that the Legislature's use of the phrase "'violence to the physical structure of the body'" in § 48-151(4) required "more than mere physical change to establish a compensable injury." *Zach*, 14 Neb. App. at 590, 710 N.W.2d at 885.

We granted the petition for further review filed by the Nebraska State Patrol.

## ASSIGNMENTS OF ERROR

The Nebraska State Patrol assigns, restated, that the Court of Appeals (1) erred as a matter of law by expanding the coverage of the Nebraska Workers' Compensation Act beyond that intended by the Legislature when it presumed that being advised of the consequences of an error at work constituted an "accident" and (2) erred in interpreting *Tarvin, supra*, or if the interpretation was correct, that *Tarvin* is inconsistent with previous holdings of this court.

## STANDARD OF REVIEW

An appellate court reviews de novo a lower court's dismissal of a complaint for failure to state a claim. *Johnston v. Nebraska Dept. of Corr. Servs.*, 270 Neb. 987, 709 N.W.2d 321 (2006). When analyzing a lower court's dismissal of a complaint for failure to state a claim, an appellate court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Id.*

The meaning of a statute is a question of law. *Bohaboj v. Rausch*, 272 Neb. 394, 721 N.W.2d 655 (2006); *Turco v. Schuning*, 271 Neb. 770, 716 N.W.2d 415 (2006). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

## ANALYSIS

### STATUTORY PRINCIPLES AND DEFINITIONS

■ As a statutorily created court, the Workers' Compensation Court is a tribunal of limited and special jurisdiction and has only such authority as has been conferred on it by statute. *Foster v. BryanLGH Med. Ctr. East*, 272 Neb. 918, 725 N.W.2d 839 (2007); *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999). In reviewing a judgment of that court, we are likewise constrained by the definitions and concepts of liability which the Legislature has articulated in the Nebraska Workers' Compensation Act. We therefore begin with the statutory principles and definitions applicable to this case.

The basic principle of workers' compensation is stated in § 48-101:

> When personal injury is caused to an employee by accident or occupational disease, arising out of and in the course of his or her employment, such employee shall receive compensation therefor from his or her employer if the employee was not willfully negligent at the time of receiving such injury.

Key terms used in this principle are specifically defined by the Nebraska Workers' Compensation Act. "Accident means an unexpected or unforeseen injury happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." § 48-151(2). "Occupational disease means only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade . . . and excludes all ordinary diseases of life to which the general public is exposed." § 48-151(3).

> Injury and personal injuries mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom. The terms include disablement resulting from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in such employment.

§ 48-151(4).

The fact that suicide is alleged as the immediate cause of Zach's death does not bar the claim because it is also alleged that Zach experienced physical changes in his brain which overrode

his will to the extent that even knowledge of the consequences of the act of suicide did not prevent it. See *Friedeman v. State*, 215 Neb. 413, 339 N.W.2d 67 (1983). The critical query is whether such changes and the resulting fatal consequence can constitute a compensable injury under either an "accident" or an "occupational disease" theory, in view of the allegation that they were caused by a mental stimulus, i.e., being advised of the consequences of a work-related error.

### DOES OPERATIVE PETITION ALLEGE COMPENSABLE INJURY RESULTING FROM ACCIDENT?

Both the review panel and the Court of Appeals concluded that the operative petition stated a workers' compensation claim based upon accidental injury. This court first addressed the issue of compensability of an accidental injury resulting from a mental stimulus in *Bekelski v. Neal Co.*, 141 Neb. 657, 4 N.W.2d 741 (1942). In that case, an elevator operator witnessed the accidental death of a passenger who was caught between the elevator floor and a floor of the building. Although the operator suffered no physical injury, she experienced extreme emotional shock immediately after the accident and was hospitalized for several days due to elevated heart rate and blood pressure. For some time after the incident, she suffered head and back pain. In addressing the operator's accidental injury claim, this court determined that the elevator malfunction was an unexpected and unforeseen event which happened suddenly and violently, producing objective symptoms of injury including elevated heart rate and blood pressure. We then addressed the "more perplexing problem" of whether there was violence to the physical structure of the operator's body, as required by the Nebraska Workers' Compensation Act. *Bekelski*, 141 Neb. at 659, 4 N.W.2d at 743. The court framed the issue as whether "disabling shock and nervousness, when unaccompanied by an impairment of the physical structure of the body, is compensable under our compensation law." *Id.* Resolving this question in the negative, the court reasoned:

> It seems to us that the legislature required, not only that there should be an accident attended by objective symptoms arising out of and in the course of the employment, but that the accident must be accompanied by violence to

the physical structure of the body. The language indicates a clear distinction between physical and bodily injury on the one hand and mental, nervous and psychiatric injury unaccompanied by violence to the physical structure of the body on the other. The plain import of the words used eliminates from the operation of the law disabilities resulting from mental disturbances, nervousness and psychiatric ailments when violence to the physical structure of the body cannot be established.

*Bekelski*, 141 Neb. at 660, 4 N.W.2d at 743. Based on this rationale, the court concluded that because the elevator operator suffered no physical injury in the elevator incident, she was not entitled to workers' compensation benefits.

The issue of whether a compensable injury may result from a mental stimulus was next addressed in *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988). There, a firefighter claimed that he sustained stress-related physical and psychological injuries as a result of a demotion and harassment by his employer. A physician diagnosed the firefighter's symptoms, including stomach pain, nausea, vomiting, psychomotor retardation, and rectal bleeding, and opined that these physical symptoms were related to job stress. Finding no dispute regarding the fact that mental rather than physical stimulus caused the injuries, we applied the reasoning of *Bekelski* in concluding that the essential element of violence to the physical structure of the body was not established. We specifically declined to adopt an approach utilized by other jurisdictions which holds that a distinct physical injury caused by a mental stimulus is compensable, noting that this approach was inconsistent with the Nebraska Workers' Compensation Act as interpreted and applied in *Bekelski*. See, also, *Dyer v. Hastings Indus.*, 252 Neb. 361, 562 N.W.2d 348 (1997) (finding depression caused by workplace harassment was result of mental rather than physical stimulus and not compensable as accidental injury).

The critical distinction between mental and physical stimulus as the basis for a compensable injury is illustrated by *Johnston v. State*, 219 Neb. 457, 364 N.W.2d 1 (1985). There, a state employee patronizing a state cafeteria poured and drank what she believed to be coffee from a coffee urn. In fact, it was urn cleaner. She was diagnosed with caustic irritation of the mouth and pharynx, as

well as superficial injuries to her esophagus. In addition, she experienced panic attacks, anxiety, and subtle symptoms of depression. Relying on *Bekelski v. Neal Co.*, 141 Neb. 657, 4 N.W.2d 741 (1942), the State argued that she could not recover workers' compensation benefits for mental injuries in the absence of a proven physical injury. While agreeing that this was the applicable legal rule, we concluded that a physical injury occurred when the employee ingested the cleaner, and therefore all of her resulting injuries were compensable.

*Tarvin v. Mutual of Omaha Ins. Co.*, 238 Neb. 851, 472 N.W.2d 727 (1991), did not alter the principle first articulated in *Bekelski* and consistently applied by this court. In *Tarvin*, a worker claimed disabling depression and anxiety caused by job-related stress and pressure. Although there was no evidence of trauma, the worker claimed that he suffered violence to the physical structure of the body based upon the testimony of a physician that job-related stress caused the worker's neurochemical level to become imbalanced and prevented normal transmission of messages from his brain. Another physician testified that job-related stress did not cause a chemical alteration of the brain and that the employee's mental condition and resulting disability were attributable solely to conditions which preceded his employment. The compensation court determined that the worker failed to prove a compensable injury. Applying a "clearly erroneous" standard of review, we concluded that based upon the medical evidence, the compensation court "in resolving a factual question, could reasonably have concluded, and did conclude, that [the employee] failed to prove that his condition was caused by employment." *Id.* at 857, 472 N.W.2d at 732. We affirmed on that basis without reaching the issue of whether the injury would have been compensable if it had been related to the worker's employment. Thus, while the issue presented in this case was raised in *Tarvin*, it was not decided.

In this case, the allegation that Zach's brain underwent physical changes simply identifies objective symptoms of an injury. There is no allegation that such changes were caused by any physical stimulus. To the contrary, it is specifically alleged that the changes to Zach's brain were caused by "being advised of the consequences of an error," which is clearly a mental stimulus. Based upon principles articulated in *Bekelski* and subsequent cases, an

injury caused by a mental stimulus does not meet the requirement in § 48-151(4) that a compensable accidental injury involve "violence to the physical structure of the body." Accordingly, the Court of Appeals and the review panel of the Workers' Compensation Court erred in concluding that the operative petition stated a claim for accidental injury arising out of and in the course and scope of Zach's employment with the Nebraska State Patrol.

### DOES OPERATIVE PETITION ALLEGE COMPENSABLE INJURY RESULTING FROM OCCUPATIONAL DISEASE?

The trial judge concluded that the underlying condition leading to Zach's death was "mental stress" and that "whether it be deemed from an 'accident' or an 'occupational disease' [it] must be accompanied by a prior physical insult to the physical structure of the body" under *Bekelski v. Neal Co.*, 141 Neb. 657, 4 N.W.2d 741 (1942). Because of its remand, the review panel found it unnecessary to address the issue of whether "one must show violence to the physical structure of the body in order to recover for an occupational disease." The Court of Appeals did not specifically address this issue. Because we have concluded that injury caused by a mental stimulus is not compensable as an injury caused by accident, we must address the alternative theory that Zach sustained a compensable injury as a result of an occupational disease. *Bekelski* did not address this issue because the case was decided in 1942, and the Legislature did not amend the compensation act to include occupational disease until 1943. See 1943 Neb. Laws, ch. 113, § 1, p. 397.

The issue turns on the meaning of the first two sentences of § 48-151(4). The first sentence provides: "Injury and personal injuries mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom." *Id.* The second sentence states: "The terms include disablement resulting from occupational disease arising out of and in the course of the employment in which the employee was engaged and which was contracted in such employment." *Id.* The question is whether both sentences, or only the second, apply to injuries caused by occupational disease.

Statutory language is to be given its plain and ordinary meaning. An appellate court will not resort to interpretation to

ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Nebraska Liq. Distrib. v. Nebraska Liq. Cont. Comm.*, 272 Neb. 390, 722 N.W.2d 10 (2006); *Young v. Midwest Fam. Mut. Ins. Co.*, 272 Neb. 385, 722 N.W.2d 13 (2006). A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *Gilbert & Martha Hitchcock Found. v. Kountze*, 272 Neb. 251, 720 N.W.2d 31 (2006); *Salts v. Lancaster Cty.*, 269 Neb. 948, 697 N.W.2d 289 (2005). The first sentence of § 48-151(4) defines the terms "injury" and "personal injuries" without distinction as to cause, i.e., accident or occupational disease. The use of the word "only" limits the definition to disease or infection naturally resulting from violence to the physical structure of the body. The second sentence refers to the "terms" defined in the first sentence, i.e., "injury" and "personal injuries," and states that they "include disablement resulting from occupational disease." The plain meaning of the two sentences, read together, is that disability due to occupational disease is compensable only if it results from violence to the physical structure of the body.

Although not presented with the precise issue before us in this case, we stated in *Ludwick v. TriWest Healthcare Alliance*, 267 Neb. 887, 894, 678 N.W.2d 517, 523 (2004), that "under the Nebraska Workers' Compensation Act, an injury has occurred as the result of an occupational disease when violence has been done to the physical structure of the body and a disability has resulted." We noted, for clarification, that the "concept of disability is the same in both accident and occupational disease cases." *Ludwick*, 267 Neb. at 895, 678 N.W.2d at 524. The cases in which we have recognized a compensable injury caused by an occupational disease have involved some type of physical stimulus constituting violence to the physical structure of the body. See, e.g., *Ludwick, supra* (reaction to latex exposure); *Morris v. Nebraska Health System*, 266 Neb. 285, 664 N.W.2d 436 (2003) (same); *Jorn v. Pigs Unlimited, Inc.*, 255 Neb. 876, 587 N.W.2d 558 (1998) (respiratory dysfunction caused by exposure to hog dust); *Berggren v. Grand Island Accessories, Inc.*, 249 Neb. 789, 545 N.W.2d 727 (1996) (seizure disorder caused by exposure to industrial solvents).

We conclude that under current Nebraska law, a compensable injury caused by an occupational disease must involve some

physical stimulus constituting violence to the physical structure of the body. Because the injury in this case is alleged to have resulted entirely from a mental stimulus, no claim is stated for injury caused by occupational disease.

### POLICY CONSIDERATIONS

The Nebraska Workers' Compensation Act is intended to provide benefits for employees who are injured on the job, and the terms of the act are to be broadly construed to accomplish its beneficent purposes. See *Vonderschmidt v. Sur-Gro*, 262 Neb. 551, 635 N.W.2d 405 (2001). In light of this statutory intent and purpose, as well as advances in medical knowledge with respect to the causes of mental illness, a persuasive argument can be made that work-related injuries such as that alleged in this case should be compensable. However, that policy decision is not ours to make.

Nebraska is one of only five states having workers' compensation statutes which define compensable injury in terms of violence to the physical structure of the body. See, Del. Code Ann. tit. 19, § 2301(15) (2005) (Delaware); Idaho Code Ann. § 72-102(18)(c) (2006) (Idaho); La. Rev. Stat. Ann. § 23:1021(8)(a) (Cum. Supp. 2007) (Louisiana); Mo. Ann. Stat § 287.020.3(5) (West Cum. Supp. 2006) (Missouri). Of these states, both Idaho and Louisiana allow compensation for injuries caused by mental stimulus, but their compensation acts contain additional separate and express provisions governing this subject. See, Idaho Code Ann. § 72-451 (2006); La. Rev. Stat. Ann. § 23:1021(8)(b) through (d) (Cum. Supp. 2007) (setting forth specific requirements that must be met for mental injury to be compensable). Nebraska does not have similar provisions in its compensation act.

We are not persuaded by the holding of the Supreme Court of Delaware that a disabling work-related mental disorder is compensable under a statute requiring a showing of violence to the physical structure of the body, whether or not preceded by a physical injury. See *State v. Cephas*, 637 A.2d 20 (Del. 1994). As this court first noted in *Bekelski v. Neal Co.*, 141 Neb. 657, 660, 4 N.W.2d 741, 743 (1942), the language used in our statute "indicates a clear distinction between physical and bodily injury on the one hand and mental, nervous and psychiatric injury unaccompanied

by violence to the physical structure of the body on the other." We conclude here, as we did more than 60 years ago in *Bekelski*, that while the Nebraska Workers' Compensation Act should be construed liberally, "it should not be extended to cases which by plain language are excluded from its scope." 141 Neb. at 661, 4 N.W.2d at 744. Whether to allow compensation for work-related injuries caused by a mental stimulus is a question that involves economic and social policy considerations that fall within the province of the Legislature.

### CONCLUSION
For the reasons discussed, we conclude that the Court of Appeals erred in affirming the judgment of the Workers' Compensation Court review panel which reversed the order of dismissal entered by the trial judge. We therefore reverse the judgment of the Court of Appeals and remand the cause to that court with directions to remand the matter to the review panel with directions to affirm the order of dismissal entered by the trial judge.

REVERSED AND REMANDED WITH DIRECTIONS.