OMAHA COLD STORAGE TERMINALS, INC., A NEBRASKA
CORPORATION, APPELLEE, V. JOHN PATTERSON, APPELLANT.
733 N.W.2d 219

Filed May 15, 2007.    No. A-05-713.

Thomas F. Hoarty, Jr., of Byam & Hoarty, for appellant.

Alan J. Mackiewicz for appellee.

IRWIN, CARLSON, and MOORE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

John Patterson appeals from orders of the district court for Douglas County, Nebraska, denying Patterson's request for a jury trial in this action to determine whether Patterson's employment claim was subject to arbitration, and ruling, on the merits of the action, that the parties had not entered into an agreement containing a provision for arbitration. On appeal, Patterson assigns various errors concerning the court's denial of his request for a jury trial and the court's ruling on the merits of the action. Because we find that Patterson was entitled to a jury trial, we reverse, and remand for a new trial.

## II. BACKGROUND

Patterson began employment with Omaha Cold Storage Terminals, Inc. (OCST), in 1984. Patterson resigned from OCST approximately 1 year after starting. Patterson returned to OCST, as president, in 1993. When Patterson returned to OCST in 1993, he was hired pursuant to a written employment contract.

In 1998, Patterson and OCST had discussions concerning Patterson's contract. OCST presented Patterson with a new

contract, which Patterson rejected. Patterson then contacted an attorney to draft a new employment contract. In June, an OCST board meeting was held. OCST informed Patterson that his draft of the new employment contract was not acceptable.

According to Patterson, OCST presented him with another proposed employment contract in July 1998. According to Patterson, he then had his attorney review the OCST proposal and draft another proposed employment contract. On July 13, a meeting was held involving Patterson and OCST board members, at which meeting the proposed employment contracts were discussed. The parties dispute exactly what occurred and whether any of the proposed employment contracts were accepted.

Patterson continued as OCST president and continued to be paid a salary and receive bonuses. In April 2004, OCST terminated Patterson's employment.

On August 12, 2004, Patterson filed a claim with the "United States Arbitration and Mediation Association." Patterson alleged that he and OCST had entered into a written employment contract in July 1998, that he had exercised an option to extend the contract in 2003, and that his employment had been wrongfully terminated by OCST. Patterson attached a copy of the alleged employment contract to his claim, which contract includes a provision requiring arbitration "[i]n the event a dispute shall arise between the parties."

On August 23, 2004, OCST filed a complaint in district court. OCST alleged that there did not exist a valid written agreement to submit claims to arbitration. OCST alleged that Patterson had continued to work for OCST without a written employment contract, as an at-will employee, between 1998 and 2004. On August 31, 2004, OCST filed a motion for a temporary stay of the arbitration proceedings.

On September 1, 2004, Patterson filed an answer and counterclaim. Patterson alleged the existence of a written employment contract and the existence of an arbitration provision.

On September 13, 2004, OCST filed an amended complaint which, for purposes of our discussion, is substantially the same as the original complaint. On October 7, Patterson filed an answer to the amended complaint, in which answer he made substantially the same assertions as in his prior answer.

On October 25 and November 24, 2004, the court entered pretrial orders. The November 24 order indicated trial dates of February 16 and 17, 2005.

On February 2, 2005, Patterson filed a motion requesting a jury trial. On February 14, the district court entered an order overruling Patterson's motion. In overruling the motion, the district court cited the following reasons: because Patterson waited until approximately 2 weeks prior to trial to request a jury; because Patterson's requests for arbitration and a jury trial on the issue of whether there existed an agreement to arbitrate were "inconsistent"; and because the gravamen of the case was whether there existed an agreement to arbitrate pursuant to Neb. Rev. Stat. § 25-2603(b) (Cum. Supp. 2006), which provides that the issue "shall be forthwith and summarily tried," which language the court interpreted to mean "'without a jury.'"

A bench trial was held on February 16 and 17, 2005. On April 14, the district court entered an order on the merits of the case, finding that there was no written employment agreement. This appeal followed.

### III. ASSIGNMENTS OF ERROR

Patterson has assigned six errors on appeal concerning the district court's denial of his request for a jury trial and concerning the court's finding that there was no written employment agreement. We find that this appeal is disposed of by consideration of Patterson's three assignments of error concerning the court's denial of his request for a jury trial.

### IV. ANALYSIS

One of the issues raised by Patterson in this appeal is his assertion that the district court erred in denying his request for a jury trial. We agree, and we find that each basis for the district court's denial of the request was erroneous.

First, we find that the district court erred in denying Patterson's request for a jury trial on the basis that Patterson waited until "approximately two weeks before the trial" to make his request. The district court cited no authority for this basis, OCST has cited no authority on appeal to support this basis, and we are unaware of any authority that suggests that a party waives his

right to a jury trial by not requesting such more than 2 weeks prior to the scheduled trial date.

Second, we find that the district court erred in denying Patterson's request for a jury trial on the basis that Patterson's request for a jury trial was "inconsistent" with his request to have his underlying wrongful termination claim submitted to arbitration. We see nothing inconsistent about Patterson's position that there was a written agreement containing an arbitration clause which required the wrongful termination claim to be decided by an arbiter on one hand and his request to have a jury determine whether such an agreement existed on the other hand. Patterson's position has consistently been simply that the case should be resolved outside of the court setting, through arbitration; OCST brought the issue of whether there existed an employment agreement into court, but Patterson's position concerning arbitration does not preclude him from requesting a jury trial. The district court has cited no authority in support of its position in this regard, OCST has cited no authority in support of the position, and we are aware of no authority in support of the position.

The third, and crucial, basis for the district court's denial of Patterson's request for a jury trial is premised on the court's interpretation of the language of § 25-2603(b) concerning the issue of whether there exists an agreement to arbitrate. While we disagree with the court's interpretation of the phrase "forthwith and summarily tried," we acknowledge this issue is one of first impression. We do not believe this language mandates that the issue is to be tried without a jury.

■ The meaning of a statute is a question of law. *Zach v. Nebraska State Patrol*, 273 Neb. 1, 727 N.W.2d 206 (2007). When reviewing questions of law, an appellate court has an obligation to resolve questions independently of the conclusion reached by the trial court. *Id.*

Section 25-2603(b) provides:

> On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party.

If found for the opposing party, the court shall order the parties to proceed to arbitration.

■ The issue presented is whether this provision, specifically the phrase "shall be forthwith and summarily tried," should be read to mean that a jury trial is unavailable when the question in dispute is whether the parties entered into a contract containing an arbitration provision. We find that the plain meaning of "summarily" does not necessitate, in every context, a finding that no jury is allowed; that comparable language in the federal Arbitration Act does not have such a meaning; and that the nature of the question in dispute favors the allowance of a jury.

The district court relied heavily on the plain meaning of the term "summarily" in § 25-2603(b), noting, "Black's Law Dictionary . . . . defines the word 'summary' as follows: 'Short; concise; immediate; preemptory [sic]; offhand; without a jury; provisional; statutory. The term . . . used in connection with legal proceedings means a short, concise, and immediate proceeding.'" See Black's Law Dictionary 1287 (5th ed. 1979). The district court focused upon the "without a jury" portion of the definition in denying Patterson's request for a jury trial.

Black's Law Dictionary 1476 (8th ed. 2004) defines the term "summary," when used as an adjective, as follows: "1. Short; concise <a summary account of the events on March 6>. 2. Without the usual formalities; esp., without a jury <a summary trial>. 3. Immediate; done without delay <the new weapon was put to summary use by the military>." It further indicates that the term "summarily," an adverb, is synonymous with the term "summary." *Id.* Thus, the plain meaning of "summarily" in the statute includes not only such a meaning as "without a jury," but also such meanings as "short [and] concise" or "immediate [and] without delay." See *id.* There is nothing in the statute to indicate that the plain meaning arrived at by the district court was the most appropriate plain meaning.

The federal Arbitration Act, 9 U.S.C. § 1 et seq. (2000 & Supp. IV 2004), provides in § 4 that if the existence of an agreement to arbitrate is in issue, "the court shall proceed summarily to the trial thereof." See, *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148 (5th Cir. 1992); *Allied-Bruce v. Dobson*, 684 So. 2d 102 (Ala. 1995). Section 4 then

specifically provides that a jury trial may be demanded in such a proceeding. See, *Dillard, supra*; *Allied-Bruce, supra*. Although the federal act includes a subsequent specific grant of the right to request a jury, the federal act uses "summarily" concerning the manner in which the existence of an agreement to arbitrate is to be resolved in an almost identical fashion to the Nebraska statute. If "summarily" in this context means "without a jury," then the federal act would, in essence, paradoxically, provide that the issue is to be resolved without a jury, even though the parties can request a jury.

Similarly, even in Nebraska there is statutory authority for a "summary" proceeding to be held in front of a jury. Neb. Rev. Stat. § 25-1155 (Reissue 1995) provides that "[i]n any civil action, the district court may grant a summary jury trial upon the written motion of all parties or their oral motion in court entered upon the record." In this context, in Nebraska statutes, if "summary" means "without a jury," then § 25-1155 would, paradoxically, provide for a jury trial without a jury.

In both of the above contexts, the alternative plain meaning of "summary" and "summarily" as "short and concise" or "immediate and without delay" would be logical and similar to the meaning the terms have in the other statutory contexts noted. That plain meaning would denote that the court is to proceed quickly and without delay to a short and concise trial on the issue of whether the parties entered an agreement including an arbitration provision. The use of "summary" or "summarily" does not mean that the right to a jury is foreclosed.

Reading § 25-2603(b) to allow for a jury determination would further be consistent with consideration of the matters actually at issue in this case. The questions actually raised by OCST and Patterson surrounding whether there existed an agreement were almost uniformly factual determinations. The questions raised by the parties involved what actually transpired at an OCST board meeting, whether the parties signed a written contract in the presence of each other, and whether the parties reached a meeting of the minds—essentially, whether an employment contract existed. These questions have traditionally been considered factual questions. See, *Gebhard v. Dixie Carbonic*, 261 Neb. 715, 625 N.W.2d 207 (2001); *Kaiser v. Millard Lumber*, 255

Neb. 943, 587 N.W.2d 875 (1999); *Overmier v. Parks*, 242 Neb. 458, 495 N.W.2d 620 (1993). Similarly, actions for declaratory judgment which involve questions of fact entitle the parties to a jury trial. *State Farm Mut. Ins. Cos. v. AMCO Ins. Co.*, 9 Neb. App. 872, 621 N.W.2d 553 (2001). See, also, *Buhrmann v. Buhrmann*, 231 Neb. 831, 438 N.W.2d 481 (1989) (fact questions in declaratory judgment action tried and determined as in other civil cases).

Considering all of the above, we find that "summarily" in § 25-2603(b) does not mean that the issue is to be tried without a jury. Rather, it means that the issue is to be tried without delay, in a short and concise manner. Where the issue is entirely factual, as it is in the present case, there is nothing in the statute to suggest that the parties are not entitled to a jury trial.

## V. CONCLUSION

Accordingly, Patterson was entitled to a jury trial on the factual issues concerning whether an employment contract was entered by Patterson and OCST. As such, we reverse, and remand for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.